LARSON, APPELLANT, v. MARCY ET AL., RESPONDENTS.

(No. 4,449.)

(Submitted September 19, 1921. Decided October 3, 1921.)

[201 Pac. 685.]

*Promissory Notes — Voluntary Associations — Principal and Agent—Contracts — Ratification — Presumptions — Pleading and Practice—Complaint—Courts—Appeal and Error— Nonsuit.*

Pleading—Complaint—Striking of Counts—When Proper.
1. Where a cause of action is stated in two or more counts and the evidence which establishes one will also support one or more of the others, the superfluous count or counts should be stricken out.

Appeal and Error—Nonsuit—Evidence—How to be Viewed.
2. On appeal from a judgment of nonsuit, the evidence must be viewed from the standpoint most favorable to plaintiff and every fact will be deemed to be established which it tends to prove.

Promissory Notes—Payment—Implied or Constructive Trusts.
3. *Quaere:* Did conveyance of all his property by a father to his children, with the understanding that the grantees should pay a note

61 Mont.—1 (1)

outstanding against him, create an implied or constructive trust capable of being enforced by the payee?

**Same—Novation—Implied or Constructive Trusts—Waiver.**

4. From his acceptance of a new note from defendants for the one executed by their father (see paragraph 3 above), a novation resulted which barred plaintiff payee from thereafter enforcing the trust which he might otherwise have relied upon to secure payment of the original note.

**Same—Voluntary Associations—Liability of Members.**

5. Persons conducting business as a voluntary association, using a common or trade name, may be held jointly and severally liable upon a note executed in the trade name by their agent authorized to do so.

**Same—Unauthorized Execution by Agent—Ratification.**

6. Though one member of a voluntary association had neither express nor implied authority, while acting as its manager, to execute a promissory note, and the instrument was therefore voidable at the election of his associates, they could ratify his act, whereupon the instrument became binding upon them as of the date of its execution, so far as the payee was concerned.

**Same—Principal and Agent—Ratification—Presumptions.**

7. Ratification of a contract may be implied from any act or conduct on the part of the principal which reasonably tends to show an intention on his part to make the act of the agent his own, and where the agency is shown to exist, the facts will be construed liberally in favor of approval by the principal and very slight circumstances and small matters will suffice to raise the presumption of ratification.

**Same—Agency—Ratification—Duty of Principal.**

8. While mere acquiescence on the part of the principal in the act of the agent is not necessarily conclusive, it is to be considered an element of ratification upon the theory that it is the duty of the principal to repudiate the unauthorized act of his agent within a reasonable time after discovery, the repudiation being brought home to the party beneficially interested.

**Same—Voluntary Association—Unauthorized Act of Agent—Ratification.**

9. The father of defendants conveyed to them all his property, share and share alike, with the understanding that they should pay a note outstanding against him. The defendants conducted the business incident to the management of the property as a voluntary association under a trade name, one of them acting as manager; and as such he executed a new note for their father's outstanding one, signing it in the trade name. Thereafter the property was divided between them, the indebtedness evidenced by the note being recognized in the division and provision made for its payment. In an action on the note, *held,* under the above rules, that by their conduct the defendants ratified the otherwise unauthorized act of their codefendant and gave to the note the same binding force and effect as though express authority to execute it had been conferred upon the signing defendant.

---

4. Acceptance of renewal note made or indorsed by personal representative of obligor in original note as novation of that paper, see note in 12 A. L. R. 1546.

5. Personal liability of member of unincorporated association on contract made by or in behalf of the association, see notes in 21 Ann. Cas. 1088; Ann. Cas. 1916A, 853; 7 A. L. R. 222.

7. What amounts to ratification of unauthorized execution of written instrument, see note in 27 Am. Dec. 343.

[61 Mont. 1.]

Trial—Nonsuit—When not to be Granted.

10. Nonsuit should not be granted unless it appears as a matter of law that recovery cannot be had in any view which can reasonably be drawn from the facts which the evidence tends to establish.

*Appeal from District Court, Rosebud County; George P. Jones, Judge.*

ACTION by Hans J. Larson against Claude O. Marcy, Ollie Harding and others. Judgment for defendants. Plaintiff appeals. Reversed and remanded.

*Mr. H. J. Haskell* and *Mr. Henry C. Smith,* for Appellant, submitted a brief; *Mr. Smith* argued the cause orally.

*Mr. Donald Campbell,* for Respondents, submitted a brief and argued the cause orally.

It is alleged by plaintiff that the defendants executed the note, whereas it appears from the note itself, and from the evidence touching its execution, that the note was in fact executed solely by C. O. Marcy, he signing the name C. O. Marcy and Company, and placing the initial "C" thereunder. There is no allegation of agency, and the question of agency must be eliminated from a consideration of this cause of action. Defendants are sought to be held liable as a group of individuals upon a note which was executed by one member of the group in a fictitious name. Section 5866 of the Revised Codes of Montana of 1907 provides as follows: "No person is liable on the instrument whose signature does not appear thereon, except as herein otherwise expressly provided, but one who signs in a trade or assumed name will be liable to the same extent as if he had signed his own name." In the light of this statutory provision it seems idle to enter into a further discussion as to the liability of the female respondents under this second cause of action. The section above referred to has been thoroughly construed by this court, and these decisions are decisive of the question and utterly defeat the position taken by the appellant. (*Kohrs* v. *Smith,* 45 Mont. 467,

124 Pac. 275; *First Nat. Bank* v. *Cottonwood Land Co.,* 51 Mont. 544, 154 Pac. 582; *Young* v. *Bray,* 54 Mont. 415, 170 Pac. 1044.) The same question is also considered by the supreme court of the state of Washington in the case of *Seattle Shoe Co.* v. *Packard,* 43 Wash. 527, 117 Am. St. Rep. 1064, 86 Pac. 845. (See, also, *First Nat. Bank & Trust Co.* v. *Flournoy,* 24 N. M. 256, 171 Pac. 793.) The appellant Larson loaned his money, as he says, to the respondents, for a period of two years. It follows that they must have agreed that they would repay the loan with interest at the end of that time. The contract would not be enforceable unless it were in writing, and the promissory note executed and delivered formed the writing which satisfied the law. It was executed by an agent, and the authority to execute such an instrument must be in writing. It is not contended in this case that any such authority existed. An attempt was made by counsel for the appellant to show a ratification by the female respondents of the act of the respondent C. O. Marcy, but section 5425 of the Revised Codes provides that "A ratification can be made only in the manner that would have been necessary to confer original authority for the act ratified, or where an oral authorization would suffice, by accepting or restraining the benefit of the act, with notice thereof." There is no contention on the part of the appellant, and there is no evidence in the record to the effect, that the act of C. O. Marcy was ratified.

Counsel for appellant suggest in their brief that the female respondents are estopped to contest appellant's claim, and presumably to deny the agency on the part of C. O. Marcy. To be availed of, estoppel must be pleaded. (*Stafford* v. *Hornbuckle,* 3 Mont. 485; *Capital Lumber Co.* v. *Barth,* 33 Mont. 94, 81 Pac. 994; *City of Butte* v. *Mikosowitz,* 39 Mont. 350, 102 Pac. 593.)

Much stress was laid by counsel for appellant upon the fact that the female respondents did not notify Larson of their repudiation of the note in question. Their silence raises

no estoppel against them. They knew nothing of the transaction until some time after it had occurred. They had been guilty of no misrepresentations and of no fraud. They had received no benefits from the transaction. They were entire strangers to the transaction, and no duty devolved upon them to take any action whatsoever. Their silence in no wise changed the situation of the appellant. As to the powers of an agent, and the authority of an agent in transactions of this character, where it is sought to bind an alleged principal or principals, we invite the court's attention to the cases of *Seattle Shoe Co.* v. *Packard, supra; Helena National Bank* v. *Rocky Mountain Tel. Co.,* 20 Mont. 379, 63 Am. St. Rep. 628, 51 Pac. 829.

MR. JUSTICE HOLLOWAY delivered the opinion of the court.

This action was brought to recover $2,582 and interest thereon from April 27, 1909. Plaintiff states his cause of action in four counts. By the first it is sought to charge the defendants as trustees and to impress certain property owned by them with a lien in plaintiff's favor. The second count sets forth the cause of action as upon a promissory note executed and delivered by the defendants to the plaintiff. The third count is like the second except that it is alleged that the defendants, as copartners, executed and delivered the note in question. In the fourth count it is alleged that the defendant C. O. Marcy, acting for himself and as agent for the other defendants, borrowed the money from the plaintiff and agreed to repay the same. Issues were joined and the cause tried, with the result that the court directed a verdict against C. O. Marcy and granted a nonsuit in favor of each of the other defendants. Judgment was entered accordingly and plaintiff appealed. After the appeal was perfected defendant Harding died and her personal representative was substituted.

Appellant insists that he made out a *prima facie* case against all of the defendants upon at least one, if not more, of the several theories of liability indicated by the different counts of his complaint. We may eliminate counts 3 and 4 at once, since the evidence does not ·tend to prove a partnership, and any **[1]** evidence which supports the fourth count will establish the second, and therefore the fourth count should have been stricken out. (31 Cyc. 121.)

The judgment in favor of the defendants who are sought **[2]** to be held was entered after nonsuit, and therefore the evidence is to be viewed on this appeal from the standpoint most favorable to plaintiff, and every fact will be deemed to be established which it tends to prove. (*Lackman* v. *Simpson,* 46 Mont. 518, 129 Pac. 325.)

In 1906 H. R. Marcy, the father of these defendants, executed and delivered to plaintiff his promissory note for $2,100. At that time Marcy resided in Forsyth and owned a large amount of property in Rosebud county. In 1907 he conveyed his personal property to C. O. Marcy and all of his real estate to the five defendants as tenants in common, share and share alike, and removed to the state of California. For four or five years thereafter the property was managed by the defendants in the name of "C. O. Marcy and Company," with C. O. Marcy the active manager in charge. In April, 1909, plaintiff visited Forsyth to make investigation concerning the indebtedness then due to him from the elder Marcy and was informed by C. O. Marcy that he had money from his father for the plaintiff. C. O. Marcy then commenced to fill a blank check to make payment of the amount due on the note—which amount had been ascertained to be $2,582—but before completing the task, inquired of plaintiff what he intended to do with the money, to which plaintiff replied that he did not have in mind any particular investment for it, and C. O. Marcy then solicited plaintiff to let him and his sisters have the use of the money at the same

rate of interest (eight per cent) which the note of the elder
Marcy bore. The request was acceded to and a new note for
$2,582 was then executed, signed "C. O. Marcy and Company."
Within ten days or two weeks thereafter, the other defendants
were apprised of the transaction, and though they complained
of the act of their brother, nothing further was done by them
until in 1913, when a division of the property was made be-
tween the several defendants. Upon such settlement the in-
debtedness to plaintiff evidenced by the note for $2,582 was
taken into consideration. It was estimated that the amount
then due was $3,000, and one-fifth thereof was charged against
each distributee, some of them receiving specific property free
from any charge for the indebtedness and others receiving
property of a greater value and assuming responsibility for
[3, 4] the indebtedness. In addition to the foregoing, plain-
tiff sought to show that the elder Marcy conveyed his prop-
erty to these defendants under an agreement that the grantees
should pay his indebtedness including the indebtedness to this
plaintiff, but this offered evidence was excluded. We may
assume that this evidence, if received, would have established
an implied or constructive trust capable of being enforced by
this plaintiff in the first instance (3 Story's Equity Juris-
prudence, 14th ed., sec. 1651), but since the transaction of
April 27, 1909, constituted a novation (sec. 4959, Rev. Codes;
*Kinsman* v. *Stanhope,* 50 Mont. 41, L. R. A. 1916C, 443, 144
Pac. 1083), he could not thereafter rely upon the trust or
enforce the same. We have then to consider whether the
evidence tends to support the allegation of the second count
that the note for $2,582 was executed and delivered by the five
defendants.

To defeat liability so far as the sisters are concerned, counsel
for respondents invoked the provisions of section 5866, Revised
Codes, as follows: "No person is liable on the instrument
whose signature does not appear thereon, except as herein
otherwise expressly provided, but one who signs in a trade

or assumed name will be liable to the same extent as if he had signed his own name.''

The section does not extend the protection contended for. [5] It is elementary that several persons may conduct business as a voluntary association, using a common or trade name and in that name be held jointly and severally liable upon contracts (5 C. J. 1335), and it is equally true that a person may sign a negotiable instrument by an agent. (Sec. 5867, Rev. Codes.)

Assuming that the evidence establishes the facts which it tends to establish, it may be said, then, that these five defend- [6] ants constituted such a voluntary association for the conduct of the business incident to the management of the property conveyed to them by their father. They employed the trade name ''C. O. Marcy and Company'' and constituted C. O. Marcy manager for the association. However, considering the nature of the business conducted, we think it cannot be said that C. O. Marcy had implied authority to execute the note for $2,582 and bind the several members of the association thereby, and the evidence shows that he did not have express authority to do so.

He was, however, the agent of the association, and even though he exceeded his authority and the resulting contract— the note in question—was voidable at the election of his sisters, the other members thereof, such contract could be ratified by them (sec. 4994, Rev. Codes), and, if ratified, it became binding as of the date of its execution so far as this plaintiff is concerned. (31 Cyc. 1283.)

Ratification may be effected by express declaration or by [7] implication, and it may be implied from any acts or conduct on the part of the principal which reasonably tends to show an intention on his part to make the act of the agent his own. And where the agency is shown to exist, the facts will be construed liberally in favor of the approval of the principal, and very slight circumstances and small matters will

suffice to raise the presumption of ratification in favor of a third party who has dealt with the agent upon the assumption that he possessed the authority and has surrendered a sub-[8] stantial right upon the faith of such assumed power. While mere acquiescence on the part of the principal is not necessarily conclusive, it is to be considered as evidence of ratification upon the theory that it is the duty of the principal to repudiate the unauthorized act of his agent within a reasonable time after discovery unless he intends to be bound by it, and such repudiation must be brought home to the party beneficially affected. The numerous authorities supporting these propositions need not be cited. They are general rules and are stated in 31 Cyc. 1245 and following pages.

Assuming the existence of the facts which the evidence tends to establish, it follows that the acquiescence of the sisters in [9] the act of the brother in executing and delivering the note for $2,582, coupled with their subsequent recognition of the indebtedness evidenced by it and the provision made for its discharge, constituted a ratification and gave to the note the same binding force and effect as though express authority to execute it had been conferred in the first instance. No [10] cause should be taken from the jury unless it appears as a matter of law that recovery cannot be had in any view which can reasonably be drawn from the facts which the evidence tends to establish. (*Stewart* v. *Stone & Webster Eng. Corp.*, 44 Mont. 160, 119 Pac. 568.)

The court erred in granting the nonsuit, and for that reason the judgment is reversed and the cause remanded for further proceedings.

*Reversed and remanded.*

MR. CHIEF JUSTICE BRANTLY and ASSOCIATE JUSTICES REYNOLDS, COOPER and GALEN concur

Rehearing denied November 14, 1921.