WALSH, APPELLANT, *v.* EAST BUTTE COPPER MINING
CO. ET AL., RESPONDENTS.

(No. 5,081.)

(Submitted March 2, 1923.   Decided March 29, 1923.)

[214 Pac. 641.]

*Waters and Watercourses — Dams — Negligent Construction —*
*Act of God—Rule of Liability—Concurrent Acts of Negli-*
*gence—Proof—Conflict in Evidence—Directed Verdict Er-*
*ror.*

Negligence—Allegation of Several Negligent Acts—When Proof of One
Sufficient—When not.
1.   Where plaintiff in an action for damages alleges several distinct
acts of negligence, any one of which, when proved, is shown to be a
proximate cause of the injury, failure to prove all does not defeat
his action, and he may recover on proof of any one or more of the
negligent acts complained of; where, however, the injury is alleged
to be the result of several acts of negligence, no one of which is
charged to have caused it alone, proof of a single one of the acts is
insufficient to entitle him to recover.

Waters and Watercourses—Flooding Lands—Filling Bed of Stream With
Mine Tailings—Dams—Negligent Construction—Proof of Concurrent
Acts—When Necessary.
2.   Under the above rule, where plaintiff in an action for damages
to his land by flooding with debris, alleged two acts of negligence on
the part of defendant mining company  one of which was the filling
of a stream with tailings to such an extent as to reduce its capacity
for carrying off surface waters, the other being the negligent con-
struction of a dam for impounding tailings and debris from its
property  rendering it insufficient to withhold a heavy flow of water,
with the result that during a heavy rainstorm the dam broke, and the
creek being unable on account of the tailings having been deposited
therein to carry off the water, it overflowed plaintiff's property,
causing the damage, he was required to prove both acts of negli-
gence, it being apparent from the pleading that neither one alone
would have caused the damage.

Same—Conflict in Evidence—Directed Verdict Error.
3.   The evidence on the issue whether the dam mentioned above was
negligently constructed having been in sharp conflict, the question
was one for the jury, and hence the court erred in directing a ver-
dict for defendant.

---

Duty of one obstructing natural watercourse to anticipate extraordinary
freshets or floods, see notes in 8 Ann. Cas. 777; Ann. Cas. 1918A, 1114;
6 L. R. A. (n. s.) 252; 15 L. R. A. (n. s.) 547; 35 L. R. A. (n. s).
1109.

[66 Mont. 592.]

Same — Dams — Negligent Construction — Allegation of Volume of Water in Reservoir Before Breaking of Dam—Proof—Immateriality.
4.   The evidence showing uncontradictedly that when the dam gave way the reservoir was nearly full and that its contents and many tons of tailings were released, and that this addition to the waters of the creek was a contributing cause of plaintiff's damage, it was immaterial to determine whether there was a large volume of water in the reservoir at the time of the rainstorm, the recital in the complaint in that respect having been one in part only of the conditions contributing to the injury.

Same—Negligence—Act of God—Rule of Liability.
5.   Where damages are occasioned by a combination of defendant's negligence and an unprecedented storm, an act of God, the defendant is liable if his alleged negligence is established as a proximate cause of the injury, as he is also if the act of God alone would not have produced it and the injury was made possible by reason of a prior or coincident negligent act of defendant which was *causa sine qua non.*

Same—Conflict in Evidence—Question of Negligence for Jury.
6.   Evidence on the issue of defendant's culpable negligence in causing the channel of the stream to become so filled with tailings as to reduce its capacity for carrying off flood waters by reason of which, in connection with the giving away of a dam charged to have been negligently constructed, plaintiff's premises were flooded, *held* of so conflicting a character as to make the issue one for the jury's determination.

Conflict in Evidence on Material Issue—Directed Verdict Error.
7.   Where the record on appeal from a judgment entered upon a directed verdict presents a case of conflicting substantial evidence on material issues from which the court cannot as a matter of law conclude which of the parties should prevail, the order directing verdict is error.

*Appeal from District Court, Silver Bow County; Joseph R. Jackson, Judge.*

ACTION by W. J. Walsh against the East Butte Copper Mining Company and another. From a judgment entered on a directed verdict for the named defendant, plaintiff appeals. Reversed and remanded for new trial.

*Mr. Frank L. Riley* and *Mr. N. A. Rotering*, for Appellant, submitted a brief, and argued the cause orally.

*Messrs. Kremer, Sanders & Kremer*, for Respondents, submitted a brief; *Mr. Louis P. Sanders* argued the cause orally.

MR. CHIEF COMMISSIONER LAW prepared the opinion for the court.

The plaintiff in this cause seeks to recover damages from the defendant company on account of certain alleged negligent acts which resulted in flooding and depositing on the property of the plaintiff tailings, filth and debris. The district court, at the close of the evidence on behalf of the plaintiff, dismissed the case as to the defendant Beaudin. This ruling of the court has not been challenged, and the case will be considered without reference to this defendant. At the close of all of the evidence in the case, upon motion of the defendant company, the court directed the jury to return a verdict in its favor on the issues involved. The appeal to this court is from the judgment entered upon the verdict in favor of the defendant company.

During the years 1915 to 1920, inclusive, the defendant company owned and operated a mining, concentrating, and smelting plant located approximately one and one-half miles east of the Harrison Avenue bridge in the city of Butte and about one-half mile from Silver Bow Creek. From November, 1915, to and inclusive of the month of January, 1920, the company by means of ditches conveyed to and dumped into Silver Bow Creek its tailings and refuse from its mining, milling and smelting operations at a point approximately 1,800 feet east of the Harrison Avenue bridge. In January and February, 1920, a dam was constructed along the banks of Silver Bow Creek for the purpose of collecting the tailings and refuse then carried from the plant into the creek, and was used for such purpose until about the 20th of March following, at which time the dam was abandoned and the tailings collected at another place. The plaintiff owned certain property adjacent to the Harrison Avenue bridge, and in the years 1916 and 1917 constructed an apartment house thereon, and approaching within fifteen feet of Silver Bow Creek. On June 28, 1920, between 7 and 8 o'clock P. M., there occurred a heavy fall of rain in the vicinity of the

plant of the defendant company and within the watershed of Silver Bow Creek; a large volume of water came down the creek and from the property surrounding the tailings dam, a part of which flowed into the reservoir. The banks of the reservoir gave way, and as a result the contents of the dam, consisting of water, tailings, slimes, stable manure and other debris, were carried down the stream. The banks of the creek adjacent to the plaintiff's property at the Harrison Avenue bridge were overflowed, and the plaintiff's apartments on the lower floor were flooded, the basement filled with water, and about four feet of sediment, consisting of tailings and slime, were deposited therein. Portions of the broken dam and its contents, consisting of stable manure, gravel and tailings, were lodged upon plaintiff's yards and surrounding properties.

All assignments of error worthy of discussion may be disposed of in two general propositions, namely: Was it necessary for plaintiff to prove more than one of the several alleged acts of negligence? Was the evidence introduced sufficient to require the submission of the case to the jury upon any theory alleged?

As to the first proposition, we believe that the following [1, 2] general rule may be deduced from the discussion of the necessity of proving all of several acts of negligence charged in the complaint contained in the decisions in the cases of *Forsell* v. *Pittsburgh & Montana Copper Co.,* 38 Mont. 403, 100 Pac. 218, and *Frederick* v. *Hale,* 42 Mont. 153, 112 Pac. 70. When plaintiff in an action states several *distinct* acts of negligence, any one of which is, when proved, shown to be a proximate cause of the injury, his action will not be defeated by failure to prove all, and he may recover on proof of one or more of the acts of negligence complained of; but, where the injury upon which the suit for damages is based is alleged to be the result of several acts of negligence, no one of which however is charged to have caused it alone, proof of a single one of the acts will not suffice.

Tested, then, by the foregoing rule, can it be said that the plaintiff was entitled to recover on proof of any one of the acts complained of? One of the acts charged is that prior to the year 1918 the channel of the creek was sufficiently large to properly carry off all flood and surface waters, but that, by reason of the defendant dumping its tailings into the creek, the channel was filled and the bottom of the creek bed raised so that its capacity for carrying off surface waters became smaller. Another allegation is to the effect that the defendant in the year 1920 constructed so-called ponds or impounding dams for impounding tailings, water and filth from the properties of the defendant company near Silver Bow Creek; that the dam was carelessly and negligently constructed in certain parts, and that it was not sufficiently strong to withhold any average or heavy flow of water, and that the defendant was repeatedly advised of such negligent construction and dangerous condition of the dam or pond; and, finally, it is alleged that on June 28, 1920, many thousands of gallons of water and thousands of tons of filth and tailings were in said pond, and that on said day occurred a rainstorm which caused some water to flow into the pond, when the banks gave way, and the contents of the dam, composed of tailings, water and filth, were caused to flow upon and into the property of the plaintiff; that, by reason of the fact that the defendant company had theretofore caused the creek-bed of said Silver Bow Creek to be filled and raised with tailings from its properties, and, because of the breaking of said impounding dam, the waters and tailings from said pond were prevented from flowing through the creek, and were caused to flow upon plaintiff's property in a large volume, causing the basement of his apartment house to be filled with water, tailings, filth and debris. It seems clear from the foregoing that neither the construction and maintenance of the dam nor the filling of the channel alone would have caused or contributed proximately to plaintiff's damage on June 28. So far as we are advised in the complaint, the

channel of the creek in its then condition would have taken care of the waters on June 28, had the dam not broken and released its contents, and, likewise, if the channel had not been partially filled, it would have taken care of the contents of the pond on June 28 without damage to the plaintiff. Thus from the pleadings we may properly conclude that neither of the alleged acts of negligence, operating independently of the other, would have caused the damage to plaintiff's property. It was therefore necessary for the plaintiff to prove as alleged the two acts of negligence on the part of defendant before he was entitled to recover.

Plaintiff relies upon *Frederick* v. *Hale, supra,* to sustain his contention that proof of any one of the alleged acts of negligence was sufficient to entitle him to recover. We cannot regard that case as an authority for any other than the general propositions of law hereinbefore stated. In *Frederick* v. *Hale* the court said: "The complaint in this action charges negligence with respect to the upper reservoir, but it also discloses beyond question that it was the breaking of the dam at the lower reservoir which caused plaintiff's injury. The plaintiff does not charge directly nor indirectly that but for the negligent construction, maintenance, or use of the upper reservoir the lower dam would not have given way." There is no suggestion in the pleadings in this case that the damage would have resulted if the channel had not been partially filled, and likewise no suggestion that damages would have resulted even with the filled condition of the channel if the dam had not broken. The distinction between the two cases is therefore apparent.

Was the evidence sufficient to entitle the plaintiff to have [3] his case submitted to the jury? The defendant contends that there was no evidence of negligent construction of the dam; that there was no proof of any substantial amount of water in the reservoir on June 28, prior to the storm; that, if the water accumulated in the reservoir and caused it to give way, it was because of an unusual and unprecedented

storm for which defendant is not responsible; that, even if
the channel had its original carrying capacity, nevertheless
plaintiff's property would have been flooded by the natural
flow of the waters produced by the storm in the watershed
of the creek; and, finally, that there is not sufficient evi-
dence to prove that the defendant company partially filled
or contributed to the filling of the creek channel. The fore-
going conditions may be considered in the order of their
enumeration. The defendant admits the construction of the
dam in January, 1920, under the supervision of its mining
engineer, who testified that the dam was built in accordance
with the approved methods of construction of dams for im-
pounding tailings. It appears that the dam was constructed
on frozen ground or gravel, was eight feet wide at the base
and two feet wide at the top, and about four and one-half
feet high, and lined with stable manure to bind the construc-
tion material. It was, in the opinion of the witness Minister,
the construction engineer, about 150 feet long, and in the
opinion of the plaintiff about 600 feet long. It broke sev-
eral times during its use in January and February; at one
of such times probably fifty tons of tailings went into the
creek. The plaintiff testified that he had been a contractor
for a number of years, had built similar dams, saw this one
constructed, knew it was not sufficiently strong to hold its
capacity in water and tailings without breaking, and consid-
ered that it was very poorly constructed. The face of the
dam was along the bed of Silver Bow Creek. He spoke to
the defendant's engineer about it, and told him he did not
think the dam would hold, but the engineer thought it would.
We think that the sharp conflict in the testimony as to
whether or not the dam was negligently constructed and
maintained was sufficient to make an issue for the jury on
this question.

The defendant strenuously urges that, inasmuch as the evi-
[4]  dence fails to show that substantial and large volumes
of water were in the pond on June 28, accumulated and

impounded by the defendant, the plaintiff cannot recover, although the dam might have been defectively constructed and maintained. It is true that the plaintiff alleges that a large volume of water was impounded on June 28, and he also alleges that the amount was increased by the influx of surface and flood waters at the time of the break. The evidence as to the quantity of impounded waters prior to the storm is uncertain as to the amount. One of the witnesses testified that the pond contained water on the morning of June 28; others that it did not, and that a path had been formed across the dam. The evidence is uncontradicted that it was full, or nearly so, when the walls gave way; that the contents of the reservoir to the extent of the water therein and about 2,500 tons of tailings were released to swell the volume of the creek, and that this addition to the volume of the creek was a contributing cause to plaintiff's damage. This being the case, the volume of the water in the reservoir prior to the storm is of small importance, and must be considered as a recital in part, only, of the conditions contributing to the injury.

It is contended by respondents that the storm was unusual [5] and unprecedented. There is substantial evidence to the contrary, and the disputed question was one for the jury under proper instructions from the court. The plaintiff's theory is that the dam was negligently constructed and maintained, incapable of sustaining the burden of an average or heavy flow of water, and that the defendant was advised and many times warned of this fact, and warned of the damage which had been done by breaks in the dam, and the possibility of great damage which might be done in the future. The law seems well established in this state to the effect that, even if the damages are occasioned by a combination of defendant's negligence and an unprecedented storm, the defendant can be held liable if his alleged negligence is established as a proximate cause of the injury (*Frederick* v. *Hale, supra*); and, if the act of God alone would not have produced

the injury complained of, and plaintiff's loss was made possible by reason of a prior, coincident or subsequent negligent act of the defendant, he is liable because his act is *causa sine qua non.* (*Lyon* v. *Chicago, M. & St. P. R. Co.,* 45 Mont. 33, 121 Pac. 886.) Assuming, then, in this cause that the storm was in contemplation of law an act of God, and that the plaintiff would have sustained the same damage as he did, regardless of whether the dam was negligently constructed, there could be no liability; on the other hand, if such damage would not have happened except for the negligent construction and maintenance of the dam, the defendant would be liable notwithstanding the act of God. The evidence on this issue we think presented clearly a question of fact for the jury to consider under proper instructions from the court.

We agree with counsel's contention that the evidence submitted is to the effect that, had the channel at the Harrison avenue bridge had the same carrying capacity on June 28 that it had in 1916 and prior thereto, it would not have taken care of the flood waters on June 28 without damage to plaintiff's property. This conclusion, however, does not permit us to indulge in the presumption that it would not have taken care of the water on June 28 had it been permitted to flow down the stream unobstructed and without the added volume of the contents of the reservoir. The evidence discloses that the water which flooded the plaintiff's premises came down the stream in a wall, bearing on its crest portions of the defendant company's dam. This condition of the water might easily have produced the flood and damage when, if the stream had been unmolested by the breaking of the reservoir, the water might have passed without damage to the plaintiff.

Finally, defendant contends that there is no evidence to sustain plaintiff's claim that the defendant company has filled [6] or contributed to the filling of the channel of the creek. The parties concede that the channel has filled very rapidly during a period of years prior to 1920. The plaintiff testified that

between the year 1916 and June 28, 1920, tailings came down
from defendant company's smelting plant—fine tailings; the
water was heavy with them. The tailings were composed of
ground refuse from the ores and the materials which they
used in their process. The tailings were heavier than water.
In 1916, 1917, 1918, 1919 and 1920, the defendant company
dumped its tailings into Silver Bow Creek most of the time.
They filled the creek bottom and raised it between his place
and defendant company's property at least five feet. He
noticed the tailings coming down the creek, and followed them
right up to their source. They came from the mill of the
East Butte Copper Mining Company. He traced the tailings
probably fifty or sixty times. He talked to officers of the
company between 1916 and June 28, 1920. Oscar Rohn, gen-
eral manager of the company, came by his place in 1917,
or early in 1918, and he complained to him about the matter.
He said, ''This creek is getting higher and higher all the
time and I should think it would be about time you would
at least try to give us relief by keeping your tailings out
of the creek,'' and Mr. Rohn said, ''Well, if we have a flood,
God help you.'' The weight of the tailings was double the
weight of the water.

Neil O'Donnell, a witness for the defendant, who had been
engaged for a period of four or five years to watch the creek
bed, and take measurements, testified that there was some
leakage at times from the Butte and Superior dump into
the creek, and in 1917 the defendant company was discharg-
ing black dark tailings, concentrates containing slimes, tail-
ings and iron. He never made a test of them, but collected
samples which settled in jars, and the settlings were slimes,
rough tailings, kinds of concentrates, and there was iron in
them. He could not tell the amount of the tailings de-
posited in the creek by the defendant company during the
time he was there, but they were coming down at all times
except when the mill was shut down. The color of the East
Butte tailings was dark blue, consisting of siliceous tailings,

concentration tailings, and heavy iron, was his recollection. He took the samples to satisfy himself where the tailings that were being deposited in the creek and remained there were coming from.

The witness Robertson, for the defendant, testified that flotation tailings as sent out of the mill by the East Butte Copper Company were very, very fine, and the velocity of the water in Silver Bow Creek was such that the tailings of that character could not settle. The tailings were very nearly as fine as talcum powder; eighty-five per cent of them would pass through a 100-mesh screen, and about sixty per cent of them through a 200-mesh screen. The creek above Harrison avenue bridge spread out in small channels and bars; the velocity was not very great. In some places the water was not very deep. P. F. Minister, mining engineer for defendant company, testified that the East Butte Company put no mill tailings in Silver Bow Creek; no tailings from the East Butte whatever except flotation tailings ever got into Silver Bow Creek. East Butte tailings are light, like talcum powder, the result of oil flotation. Witness Rothwell, for defendant, testified as to the method of reduction, and put some tailings through three screens. He was certain that no tailings of the East Butte Company would sink in the running waters of Silver Bow Creek.

The witness Strassburger testified that the fall of the creek at Harrison Avenue was about one and one-half inches to the one hundred feet. He had taken samples of the creek-bed and found that approximately ten per cent would pass through a 100-mesh screen, and consisted of fine dark-colored silt, but could not detect any flotation tailings. He was quite sure there was a lot of mine tailings along the creek, and there might be some in the creek. A number of exhibits were introduced showing samples of the creek-bed.

Plaintiff, testifying in rebuttal, said he saw some of the samples produced in court by the defendant taken, and that they were taken in sand banks. During the sixty days pre-

[66 Mont. 592.]

ceding the trial, according to the plaintiff, the defendant had turned enormous and unusual quantities of waters in the creek channel at night, and enormous quantities of tailings had been cut away from mining dumps. Several bars of sand had been cut away for a distance of five hundred feet long, twelve to fifteen feet wide, and three to six feet in depth. Plaintiff's rebuttal testimony was denied by the defendant.

Many witnesses corroborated the plaintiff in his testimony with reference to the source of the material which had been deposited in the channel of the creek. The defendant, aside from producing two witnesses who testified that the tailings from defendant's plant would not sink in running water, produced a number of samples taken from the channel of the creek, also a sample of the tailings produced at the plant. The samples taken from the creek bed are coarse in size and yellow in color, while the samples from the plant are very fine in character as to size, and blue in color. The defendant contends that this physical difference in the character of the samples, coupled with the evidence of the two witnesses to the effect that defendant's tailings would not sink in running water, and another to the effect that the defendant company had produced nothing but flotation tailings, is sufficient to bring this case within the rule of this court, declared in *Casey* v. *Northern Pac. Ry. Co.*, 60 Mont. 56, 198 Pac. 141, wherein it is said: "Where physical conditions  *  *  *  point so unerringly to the truth as to leave no room for a contrary conclusion based on reason or common sense, the mere fact that testimony is introduced in conflict with them is not sufficient to make a case for the jury." We think, however, the facts in this case do not bring the defendant within the rule there announced. We have no actual demonstration in evidence here which convinces us that flotation tailings will not sink in the running waters of Silver Bow Creek, only the testimony of two witnesses that they will not, and many witnesses that they will and do, clearly producing a question of fact for the

jury, and the jury alone. The difference in size, composition, and color of the samples produced is striking. One witness testified that the change in color was due to oxidization after being released from the mill and exposed to water and air. This is not disputed in the evidence. Other witnesses testified positively that no tailings of this size came from the defendant's mill. Others testified that they saw such coming from the mill, and secured samples thereof. Others in testifying as to the process of treating the ores mentioned tailings of various sizes, including jig tailings, but the disposition of such tailings was not explained. We think the [7] record presents a case of conflicting substantial evidence on material issues, and see no reason why this court or the court below can say as a matter of law which of the parties should prevail. "No case should be taken from the jury unless it appears as a matter of law that recovery cannot be had in any view which can reasonably be drawn from the facts which the evidence tends to establish." (*Larson* v. *Marcy,* 61 Mont. 1, 201 Pac. 685; *Stewart* v. *Stone & Webster Eng. Corp.,* 44 Mont. 160, 119 Pac. 568.)

We therefore recommend that the judgment be reversed, and the cause remanded to the district court for a new trial.

PER CURIAM: For the reasons given in the foregoing opinion, the judgment appealed from is reversed, and the cause remanded to the district court for a new trial.

*Reversed and remanded.*

ON MOTION FOR REHEARING.

(Decided April 25, 1923.)

Opinion: PER CURIAM.

On motion for rehearing counsel for respondents have filed an elaborate printed brief, in which they contend with great earnestness that the opinion of the court is errone-

ous for a number of reasons. The principal one, and the one upon which the others depend, is based upon their assertion that the fundamental error which pervades the court's opinion arises out of a failure to give adequate consideration to the character of the negligence charged.

After alleging "that in the year 1920 the defendants constructed a so-called pond and impounding dams or reservoirs for the purpose of impounding the tailings, water, and filth from the properties of the defendant," with other allegations showing that said dams and reservoirs were so carelessly and negligently constructed that they were not sufficiently strong to withstand any average or heavy flow of water, the complaint states in the first part of paragraph 8: "That on the 28th day of June, 1920, many thousands of gallons of water and thousands of tons of filth and tailings were in said pond, and that on said day occurred a rainstorm which caused some water to flow into the said pond, and that the banks and dams of the said pond gave way, and the contents thereof, composed of tailings, water, and filth, were caused to flow towards, upon, and into the property of the plaintiff." Later in paragraph 8 it is alleged: "That by reason of the fact that the defendant, the East Butte Copper Mining Company, had theretofore caused the creek bed of the said Silver Bow creek to be filled in and raised with tailings from its properties, and because of the breaking of the said impounding pond, the waters and tailings from said pond were prevented from flowing through the creek, but were caused to flow upon plaintiff's property in a large volume." And counsel say that: "As a result of overlooking the foregoing allegations the opinion erroneously holds that it was immaterial whether at and immediately prior to the time the cloudburst commenced the pond contained many thousands of gallons of water, or a large volume of water of such extent, depth, weight and pressure as to constitute a dangerous instrumentality of destruction, if, being prevented from flowing down the channel of Silver Bow creek by reason of the

filled-in condition of the creek bed, these waters would inundate plaintiff's premises, or whether at that time the pond was empty.''

We think counsel fail to comprehend the full scope and meaning of the above-quoted charging matter from the first part of paragraph 8. Counsel place undue emphasis upon the phrase ''many thousands of gallons of water,'' and apparently overlook the fact that this phrase is used conjunctively with what follows. The pleading is, ''many thousands of gallons of water and thousands of tons of filth and tailings were in said pond.'' Later on comes the allegation that on the day in question a rainstorm occurred which caused some water to flow into the pond, and that when the banks and dams of the pond gave way the contents thereof, ''composed of tailings, water, and filth,'' were caused ''to flow towards, upon, and into the property of the plaintiff.''

It is apparent that according to the allegations, if it had not been for the filled-in condition of the bed of the creek, which condition was caused by the defendant company, the creek channel would have carried away the tailings, water and filth; and in view of this it is not material· as to how the water came to be in the pond on that day. When this is considered, it seems clear that the allegations of the complaint, when read together, are not susceptible of the meaning counsel gives them. Thus analyzed, in our opinion, there is no inconsistency in the opinion of the court. Nor does the opinion depart from the rule asserted in *Forsell* v. *Pittsburgh & Montana Copper Co.,* 38 Mont. 403, 100 Pac. 218, as counsel assert.

The motion for a rehearing is denied.