No. 82-67

IN THE SUPREME COURT OF THE STATE OF MONTANA

1982

---

MORRIS RUDIO, d/b/a RUDIO'S,

      Plaintiff, Respondent and Cross-Plaintiff,

  -vs-

YELLOWSTONE MERCHANDISING CORP., et al.,

      Defendants and Appellants.

---

Appeal from:  District Court of the Thirteenth Judicial District,
In and for the County of Yellowstone, The Honorable
Robert H. Wilson, Judge presiding.

Counsel of Record:

    For Appellant:

        Alexander & Baucus, Great Falls, Montana
        Dzivi, Conklin & Nybo, Great Falls, Montana

    For Respondent:

        Mouat & Martinson, Billings, Montana

---

Submitted on Briefs:   June 3, 1982

Decided:   October 4, 1982

Filed: OCT 5 - 1982

_Thomas J. Kearney_
Clerk

Mr. Justice John Conway Harrison delivered the Opinion of the Court.

Morris Rudio initiated this action following the default of Yellowstone Merchandising on their contract to buy Rudio's business. Defendant, Yellowstone Merchandising Corporation, was the original buyer on the sale contract. Defendant, Intermountain Merchandising Corporation, was assigned the contract by Yellowstone. Defendants, Eugene B. Thayer, Penelope Thayer, Robert G. Hicks, and Barbara J. Hicks, signed an agreement guarantying the original obligation. Defendant, Montana Merchandising, Inc., is the parent corporation and secured creditor of Intermountain Merchandising, Inc. The District Court found Yellowstone primarily liable to Rudio for the amount owing on the contract. The District Court found Intermountain Montana Merchandising, Eugene Thayer, and Robert Hicks secondarily liable. From this judgment the defendants appeal.

Respondent (hereinafter also referred to as Rudio) entered into an agreement with appellant, Yellowstone Merchandising Corporation (Yellowstone) to sell property, which formerly constituted respondent's business known as Rudio's. The property consisted of inventory, goodwill, fixtures and other assets. The purchase price for the inventory was $84,963 and for the other assets $5,500. The contract provided for a down payment of $12,500, with the balance to be paid in monthly installments of $750 each commencing September 1, 1976, with interest computed at 9 percent per annum. The agreement was executed on or about July 31, 1976, by Rudio and by Yellowstone through Rex Marquardt, vice president, and Robert Hicks, secretary.

Under the terms of the agreement, Rudio was granted a security interest in the property which was the subject matter of the agreement. Rudio properly perfected his interest by filing a financing statement in the office of the Yellowstone county clerk and recorder on October 21, 1976, and in

the office of the secretary of state of the State of Montana on November 4, 1976. The financing statement covered all of the personal property involved in the transaction as well as the proceeds of any sale of the collateral.

Shortly after the agreement was entered into, on or about September 30, 1976, Yellowstone was merged with appellant, Intermountain Merchandising Corp. (IMCO). Pursuant to the merger, IMCO assumed all liabilities, contracts and obligations of Yellowstone incurred prior to September 30, 1976.

IMCO continued to operate the wholesale and retail business purchased from Rudio much as it had been operated by Yellowstone. Rudio remained as an employee of Yellowstone, and then of IMCO, as a consultant and salesman. Sometime prior to the end of 1976 one category of inventory was completely removed from Rudio's warehouse. An inventory on January 21, 1977, showed there was less inventory remaining in the warehouse than the amount owed on the contract. The buy and sell agreement between Rudio and Yellowstone contained a clause which stated:

"Unless otherwise agreed to by seller, inventory shall not be reduced in value to less than the amount still owing on the principal under the terms of the agreement."

Shortly after January 21, 1977, Rudio informed the manager of Rudio's, Mr. Dallon Thomas, that he was not to remove any more inventory from the warehouse unless Rudio gave him permission.

Late in January 1977, the officers of IMCO decided to transfer the assets located in their Billings operations to Great Falls. Rudio informed the manager that he would not allow the inventory to be removed from the Billings warehouse unless he had additional security. On February 10, 1977, Eugene Thayer and Robert Hicks, the owners of IMCO, and their wives, signed a guaranty agreement whereby they guaranteed the payments of Yellowstone, now assigned to IMCO, to Rudio in consideration of Rudio's permission to allow the transfer of the inventory from Billings to Great Falls.

The inventory was moved to Great Falls where it was stored with other inventory owned by IMCO. IMCO continued to operate its wholesale and retail business in Great Falls. In May 1977, Thayer agreed to buy all of Hick's IMCO stock which terminated Hick's ownership in IMCO.

Sometime after the first of January 1978, IMCO obtained a loan from the Northwestern National Bank of Great Falls in the principal amount of $450,000. Northwestern took a security interest in IMCO's inventory which was secondary to Rudio's security interest. The loan was also guaranteed by Montana Merchandising Inc., (MMI), a corporation owned by Eugene Thayer. IMCO's loan from Northwestern went in default and the bank requested MMI to honor its guaranty. MMI paid the note and took an assignment from Northwestern of the bank's security interest in IMCO's inventory. Thus, one corporation obtained a security interest in the other corporation's assets, while both corporations were owned by the same person, Eugene Thayer.

On March 6, 1978, IMCO made its last payment to Rudio. On August 9, 1978, Rudio filed a complaint in Yellowstone County against Yellowstone and IMCO, for the amount owed on the contract up to the date of the filing of the complaint.

In the winter of 1979, IMCO decided to liquidate its entire stock of inventory. On or about March 22, 1979, Rudio became aware of the liquidation sale via a memorandum sent by IMCO to various dealers. IMCO did not send Rudio any notice of the liquidation sale. The proceeds of the liquidation sale amounted to approximately $280,000. The proceeds were all deposited into the account of MMI, Rudio received nothing. Rudio took no legal action to execute upon the proceeds of the liquidation sale.

On December 22, 1978, Rudio notified appellants, Hicks and Thayer, of the default of Yellowstone and his intention to enforce the terms of the guaranty agreement.

On June 17, 1982, a trial was held in District Court in Yellowstone County. The District Court found the appellants to

be liable to Rudio in the amount of $60,098.55 with interest at the rate of 9 percent for the balance of the contract. As between the defendants the court ordered liability to be in the following order:

First - Yellowstone Merchandising

Second - Intermountain Merchandising (IMCO)

Third - Montana Merchandising (MMI)

Fourth - Eugene Thayer and Robert Hicks, joint guarantors

The court also awarded Rudio attorney's fees in the amount of $13,189.15. The court further held that there was no consideration for the wives, Penelope Thayer and Barbara Hicks, to be bound by the guaranty they signed and thus Rudio is liable to them for their attorney's fees and costs.

From that judgment, appellants appeal.

Numerous issues are raised by the various parties on appeal. The substance of the issues is as follows:

1. Whether the appeal by appellant, Robert Hicks, was timely filed.

2. Whether the guaranty agreement signed by Eugene Thayer, Penelope Thayer, Robert Hicks and Barbara Hicks was void for lack of consideration.

3. Whether the respondent, Morris Rudio, released his security interest in IMCO's inventory by an implied waiver, and thus exonerated the guarantors.

4. Whether the trial court erred in its calculation of the amount of the judgment.

5. Whether the trial court erred in its calculation of the awards of attorney's fees.

Respondent moved to dismiss the appeal of Robert Hicks and Barbara Hicks on the grounds that it was not timely filed under Rule 5, M.R.App.Civ.P. Rule 5, M.R.App.Civ.P., requires an appeal be taken within thirty days of the entry of judgment, except where service of notice of entry of judgment is required by Rule 77(d), M.R.Civ.P., the time shall be thirty days from the

- 5 -

service of notice of entry of judgment. This case is one in which notice of entry of judgment is required under Rule 77(d), M.R.Civ.P. As the original judgment of the District Court was amended we hold that the thirty day period did not commence to run until the final notice of entry of judgment was mailed. Here, the final notice of entry of judgment was mailed on November 5, 1981. Appellants Robert and Barbara Hicks filed their notice of appeal on December 7, 1981. However, allowing three days for mailing the notice of appeal was filed within the thirty day requirement.

Appellants, Thayer and Hicks, argue the guaranty which they and their wives signed on February 10, 1977, was void for lack of consideration. We disagree. It is true that a guaranty must be based upon a consideration. Doorly v. Goodman (1924), 71 Mont. 529, 230 P. 779. What constitutes consideration has been defined in various ways. Section 28-2-801, MCA, states:

> "Any benefit conferred or agreed to be con-
> ferred upon the promisor by any other person,
> to which the promisor is not legally entitled,
> or any other prejudice suffered or agreed to
> be suffered by such person, other than such as
> he is at the time of consent lawfully bound to
> suffer, as an inducement to the promisor is a
> good consideration for a promise."

Forebearance to enforce a legal right is a sufficient consideration to support a contract if there is an agreement to forebear. Doorly, supra. It is hornbook law that a promise to perform an existing legal obligation does not constitute consideration for a contract. 17 Am.Jur.2d. Contracts, Section 119 at 465. It is equally well-established that the relinquishment of a legal or contract right is sufficient consideration to support a contract. 17 Am.Jur.2d Contracts, Section 109 at 455. Rickett v. Doze (1979), _ _ _ _ Mont. _ _ _ _ , 603 P.2d 679, 36 St.Rep. 2170. Mutual promises alone are enough to constitute valid consideration. 17 C.J.S. Contracts, Sections 97, 98. Miller v. Titeca (1981), _ _ _ _ Mont. _ _ _ _ , 628 P.2d 670, 38 St.Rep. 853.

Here, we find the consideration could meet any of the above-

mentioned tests. The facts indicate Rudio was becoming increasingly concerned about the size of the inventory. An inventory taken in January 1977 appeared to show the amount of inventory remaining in the warehouse was less than the amount owed on the contract at that time. The contract did have a clause which required that the inventory should not be reduced in value to less than the amount still owing on the principal. The contract also contained a clause which stated any line of inventory sought to be "eliminated" would be subject to the approval of Rudio. At the time appellants sought to transfer the inventory from Billings to Great Falls, Rudio could have taken steps to prevent the transfer although the contract did not specifically state that the inventory could not be moved without Rudio's consent. Certainly, Rudio could have brought an action for breach of contract when the inventory value became less than the value of the remaining principal. Rudio could also have sought to enjoin the removal of the inventory relying on the clause which prohibited "elimination" of inventory without Rudio's consent.

We are not speculating as to the outcome of Rudio's prospective actions. We merely point out that Rudio did have legal rights and could have attempted to block the tansfer of the inventory. Rudio did relinquish these rights in exchange for the promise of Thayer and Hicks to guaranty Yellowstone's obligation. The guaranty agreement was made, "[i]n consideration of permission being granted by Morris Rudio," for the transfer of the inventory from Billings to Great Falls, "and for other valuable consideration." Apparently Thayer and Hicks thought at the time they signed the guaranty that Rudio could prevent the transfer of the inventory. As the owners of Yellowstone Corporation, they had a personal interest in the move from Billings to Great Falls. Consequently, we hold there was consideration for their signing as guarantors for Yellowstone.

In its conclusions of law, paragraph 7, the District Court

ruled:

> "7.    Plaintiff is entitled to judgement for
> said amount against Montana Merchandising as
> purchaser of the secured collateral. . .."

Although we agree with the District Court's ruling that Rudio
is entitled to a judgment against MMI, we do not agree with the
court's reason.    The District Court held that MMI purchased the
inventory from IMCO.    This is wholly unsupported by the record.
The record shows that MMI, while remaining a separate entity,
guaranteed a loan IMCO obtained from Northwestern National Bank.
When Northwestern asked MMI to honor its guaranty, MMI repaid the
loan and took the bank's security interest in IMCO's inventory.
MMI did not actually purchase the inventory but merely had a
security interest which was inferior to Rudio's.

Section 30-9-312(3), MCA, states:

> "(3)    A purchase money security interest in
> inventory collateral has priority over a
> conflicting security interest in the same
> collateral if:
>
> "(a)    the purchase money security interest is
> perfected at the time the debtor received
> possession; and
>
> "(b)    any secured party whose security
> interest is known to the holder of the
> purchase money security interest or who, prior
> to the date of the filing made by the holder
> of the purchase money security interest, had
> filed a financing statement covering the same
> items or type of inventory, has received noti-
> fication of the purchase money security
> interest before the debtor receives possession
> of the collateral covered by the purchase
> money security interest; and
>
> "(c)    such notification states that the person
> giving the notice has or expects to acquire a
> purchase money security interest in the inven-
> tory of the debtor, describing such inventory
> by item or type."    (Emphasis supplied.)

Appellants rely heavily on section 30-9-306(2), MCA, which
states:

> "(2)    Except where this chapter otherwise pro-
> vides, a security interest continues in colla-
> teral notwithstanding sale, exchange or other
> disposition thereof by the debtor unless his
> action was authorized by the secured party in
> the security agreement or otherwise, and also
> continues in any identifiable proceeds
> including collections received by the debtor."
> (Emphasis supplied.)

Appellants argue that Rudio waived his security interest by implied consent. Appellants claim that Rudio had notice of the liquidation sale and authorized it by not taking action to prevent it. They cite Clovis National Bank v Thomas (1967), 77 N.M. 554, 425 P.2d 726, and a string of following cases which hold that a plaintiff who acquiesces in the sale of collateral has thereby consented to the sale and waives his security interest against a subsequent purchaser. However, Clovis is distinguishable from the case at hand. Clovis involved a plaintiff who loaned money to the debtor to purchase cattle. When the debtor sold the cattle to the defendant, plaintiff sued for conversion. The New Mexico Supreme Court ruled that the plaintiff had consented to the sale of the collateral, waived his security interest, and thus was unable to hold the defendant liable for conversion. The Court further held that the plaintiff was unable to trace the proceeds because the financing statement did not cover proceeds.

Here appellants are not purchasers as the defendant was in the Clovis case. Appellants were simply secured creditors with a security interest inferior to Rudio's. Whether or not Rudio waived his security interest has no bearing on his right to the proceeds of the sale as against competing creditors such as MMI. In, In Re Mid State Wood Products Company (D.Ill. 1957), 323 F.Supp. 853, the Federal District Court held:

> "Section 9-306(2) of the code expressly reserves the right to proceeds notwithstanding authorization to sell the primary collateral. Whether the sale was authorized is made determinative only of the secured party's right to follow the collateral after sale affecting his priorities as against the purchaser, but in no manner affects his interest in the retained proceeds as against competing creditors. This construction of the statutory provision is emphasized in the Official Code Comment upon that provision. See UCC, Official Code Comment, section 9-306(2) at par. 2 . . .

> "As previously discussed, the Uniform Commercial Code is explicit in preserving the priority of the secured party to the proceeds notwithstanding his consent to the sale of the primary collateral and further notwithstanding his consent to the debtor's unrestricted use

and disposition of these proceeds so long as they remain identifiable. See UCC sections 9-306, 9-205 and the Official Code Comments upon these sections.

"Authorization to sell collateral at best affects the secured party's rights against the subsequent purchaser but not as against the creditor." (Emphasis added) 323 F.Supp. at 857.

We agree with the Federal District Court's interpretation of 9-306(2), codified as 30-9-306(2), MCA. It appears that the drafters of the UCC only intended waiver to apply to a subsequent purchaser of the collateral. Thus, the purchaser is protected from any attempt by the secured creditor to obtain possession of the collateral, after the creditor authorized its sale. However, the creditor does not waive his security interest as against other secured or unsecured creditors.

In this case MMI, the parent corporation, virtually conducted IMCO's liquidation and simply deposited all proceeds into MMI's account. Considering both corporations were owned by the same person, the transaction comes very close to being a fraudulent conveyance regardless of whether there was a waiver or not. MMI had no right to simply deposit the liquidation proceeds into its own account in violation of Rudio's security interest. Therefore, we hold that MMI is secondarily liable to Rudio for the amount of the judgment.

Appellants, Thayer and Hicks argue that if there was a waiver of Rudio's security interest, then they should be exonerated as guarantors. They cite section 28-11-211, MCA, which provides:

"(1) A guarantor is exonerated, except so far as he may be idemnified by the principal, if by any act of the creditor without the consent of the guarantor the original obligation of the principal is altered in any respect or the remedies or rights of the creditor against the principal in respect there are in any way impaired or suspended."

If we were to apply this statute to appellant, Thayer, we would be holding that Rudio should have stopped the sale of IMCO's inventory, owned by Thayer, so that MMI, also owned by Thayer, would be protected from IMCO's irresponsible acts. We do

not choose to do so.

Appellant, Hicks, also argues that if Rudio waived his security interest in the inventory, then Hicks should be exonerated as guarantor. As we did not find that Rudio had waived his security interest we do not need to comment upon this argument further. Both Thayer and Hicks agree that without a waiver, there is no exoneration.

Appellants argue the trial court erred in the calculation of the amount due on the contract. They base this claim on the provision of the contract which allowed elimination of inventory if the proceeds were applied to the principal amount due on the contract. Appellants claim that Rudio only credited an amount of $15,644.96 for elimination of inventory which had a net cost of $20,186.32. The function of this Court on appeal is to determine if there is substantial evidence to support the findings of the District Court. We will not reverse the findings of the District Court unless there is a clear preponderance of the evidence against such findings. Schulz v. Peake (1978), 178 Mont. 261, 583 P.2d 425. Here, we are not presented with enough documentation to reverse the District Court. Without such documentation there is not a clear preponderance of the evidence against the trial court's finding. The trial court sat through days of testimony and exhibits. It based its finding upon that evidence. It is not our function to overturn the trial court's finding based on two figures not supported by examination. We hold the trial court's calculation of the amount due on the contract to be correct.

The trial court awarded attorney's fees to two of the guarantors, Penelope Thayer and Barbara Hicks, when it ruled that there was no consideration to bind them to the guaranty agreement. The original buy-sell agreement between Rudio and Yellowstone contained the following clause: "In the event suit or action is brought by any party under this agreement to enforce any of its terms, it is agreed that the prevailing party shall be entitled

- 11 -

to a reasonable attorney's fee to be fixed by the trial and appellate courts."

In First Westside National Bank of Great Falls v. Llera (1978), 176 Mont. 481, 580 P.2d 100, we ruled that only parties to the original contract have reciprocal rights to attorney's fees. Parties which are not parties to the original contract can in no event become entitled to attorney fees either under the contract or the statutory provision. Here, Barbara Hicks and Penelope Thayer were not parties to the original contract, they simply signed a guaranty agreement which they had no intention to honor. Since they were not parties to the original contract, the trial court erred in awarding them attorney fees.

Affirmed in part, reversed in part and remanded to the District Court for judgment in accordance with this opinion.

_____
Justice

We concur:

_____
Chief Justice

_____

_____

_____
Justices