DA 06-0084

FILED

February 18 2009

*Ed Smith*
CLERK OF THE SUPREME COURT
STATE OF MONTANA

IN THE SUPREME COURT OF THE STATE OF MONTANA

2009 MT 36

SCOTT D. ERLER, D.D.S. PROFIT SHARING PLAN,

      Plaintiff and Appellee,

  v.

CREATIVE FINANCE & INVESTMENTS, L.L.C.,
LEOTA OSBURN; DONALD H. HILL; PATRICIA A. HILL;
RAYMOND H. HILL; SUSAN L. HILL; ROBERT McCLAIN;
RONI McCLAIN; DAVID M. SHERICK; HAROLD MEYER;
STEPHEN BREEZE; JOHN TILTON; CLOVERHILL MORTGAGE
GROUP; CORINA PARSONS, ET AL.,

      Defendants and Appellant.

APPEAL FROM:    District Court of the Twenty-First Judicial District,
In and For the County of Ravalli, Cause No. DV-01-186
Honorable Jeffrey H. Langton, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

          Patrick G. Frank; Worden Thane P.C.; Missoula, Montana

      For Appellee:

          Lars R. Skjelset, Suzanne Geer; Skjelset & Geer, PLLP; Missoula,
Montana

                        Submitted on Briefs:  January 4, 2007

                                  Decided:  February 18, 2009

Filed:

_____
Clerk

Justice Jim Rice delivered the Opinion of the Court.

¶1    Appellant David Sherick (Sherick) appeals from the order of the Twenty-First Judicial District Court, Ravalli County, granting summary judgment in favor of Respondent Scott D. Erler (Erler). We affirm.

¶2    We consider the following issue on appeal:

¶3    Did the District Court err in ruling that Leota Osburn and Donald Hill ratified the forged deed transferring property to Erler?

## BACKGROUND

¶4    This matter involves competing claims to commercial property located at 319 Main Street, Hamilton, Montana, bearing the legal description of Lot 8, Block 31, Original Townsite of Hamilton, Ravalli County, Montana. The property was originally owned, for purposes of this case, by Jamie and Leota Osburn, and was thereafter transferred to multiple parties in successive transactions, some involving fraud and/or forgery.

¶5    The parties do not dispute the factual background. Jamie and Leota Osburn sold the property in 1986 to Donald and Patricia Hill by contract for deed. A Notice of Purchaser's Interest (NPI) for the transaction was recorded with the Ravalli County Clerk and Recorder on January 2, 1986. On September 28, 1989, Donald and Patricia Hill sold their purchaser's interest under the contract to Raymond and Susan Hill, also pursuant to a contract for deed, and an NPI was recorded documenting this transaction. These transactions were escrowed pending payoff of the purchase and sale contracts. On

2

October 4, 1989, an acknowledged statement required by § 7-4-2613(1)(c), MCA, known as an INH-3, was recorded, indicating that Jamie Osburn's joint tenancy interest in the property had terminated by Jamie's death, thus transferring that interest to Leota Osburn (Osburn) as the surviving joint tenant.

¶6 In 1997, Osburn, of Davenport, Iowa, purportedly retained Creative Finance and Investments, L.L.C. (Creative Finance), a Missoula business, for the purpose of selling the balance of her seller's interest in the contract for deed with Donald and Patricia Hill. Creative Finance brokered a transaction in which the Scott D. Erler, D.D.S. Profit Sharing Plan (Erler) purchased Osburn's remaining interest in the contract, then valued by the parties at $44,860.03. Erler received a written assignment of contract interest and a warranty deed, purportedly from Osburn, both of which were recorded on March 25, 1997. Osburn's signatures on these documents were ostensibly acknowledged by a notary public residing in Cedar County, Iowa. Erler signed a quitclaim deed to Donald and Patricia Hill, which was placed into escrow and was to be held until the contract for deed was paid off. The escrow was subsequently transferred to Cloverhill Mortgage Group in Iowa, for which Susan Hill was an agent. Erler's quitclaim deed to Donald and Patricia Hill was then fraudulently released from escrow and recorded on April 10, 1998, before the terms of the contract had been fulfilled. Erler was unaware that the quitclaim deed he had executed in favor of the Hills had been released and recorded.

¶7 Meanwhile, Patricia Hill conveyed her interest in the property to Donald Hill by quitclaim deed recorded on May 26, 1998. Patricia Hill is now deceased. On May 19,

3

1998, Donald Hill, of Davenport, Iowa, purportedly sold his seller's interest in the 1989 contract for deed with Raymond and Susan Hill to Questa Resources, Inc. (Questa), a Big Fork, Montana, mortgage broker. Donald Hill's signature on the assignment document was ostensibly acknowledged by a notary public from Cedar County, Iowa, and was also recorded on May 26, 1998. Questa had obtained a title report from First American Title Insurance Company in Hamilton, which indicated that the only encumbrances or title exceptions for the property were the 1986 Osburn to Donald and Patricia Hill contract for deed and the 1989 Donald and Patricia Hill to Raymond and Susan Hill contract for deed. Questa then sold the seller's interest it had purportedly purchased to Robert and Roni McClain. A title search at this time revealed no other encumbrances of record, and an assignment of seller's interest to the McClains was recorded on November 13, 1998.

¶8     On June 4, 1999, Donald Hill executed a Quit Claim Deed and Assignment of Seller's Interest in Agreement in which he purported to sell the same interest in the property to the David M. Sherick Profit Sharing Plan and Trust (Sherick). Donald Hill's signature on this document was ostensibly acknowledged by a notary public in Aberdeen, South Dakota. Donald allegedly produced an apparently altered title report showing no encumbrances or exceptions on the property. Donald accepted cash from Sherick, and represented to Sherick that an assignment of seller's interest to Sherick would be recorded, but this was never done. Sherick received monthly payments for a short time, which then ceased.

4

¶9	Erler received payments on his contract with Osburn through July 1999, when they stopped without explanation. Upon investigation, Erler discovered the fraudulent recording of the quitclaim deed to Donald and Patricia Hill in April 1998. On August 6, 1999, he recorded a Notice of Vendor's Lien in an effort to forestall further fraudulent activity with regard to the property. On December 14, 2000, warranty deeds from Osburn to Donald and Patricia Hill, and from Donald and Patricia Hill to Raymond and Susan Hill, were recorded. On July 5, 2001, Erler filed a complaint against Creative Finance, Cloverhill Mortgage Group and the individuals involved herein, variously alleging negligence, negligent misrepresentation, breach of contract, actual fraud, constructive fraud, deceit, punitive damages and notarial misconduct. Erler also sought to quiet title to the property, and requested damages, attorney's fees and costs. On September 26, 2001, Erler recorded a *lis pendens* on the property.

¶10	On December 20, 2001, a stipulation between Erler and Donald Hill was filed agreeing to the entry of a judgment or quiet title decree against Hill declaring that he had no right, title, or interest in the subject real property, and that no other judgment would be entered against him for money owed, damages, costs, attorney's fees, or any other relief. The stipulation further provided that Hill was not required to appear or file a responsive pleading in this cause. Erler also filed a notice with the court regarding Patricia Hill, deceased, indicating that no action would be taken against her estate or against her husband, Donald Hill, in his capacity as heir to her estate.

5

¶11 On January 4, 2002, Erler filed a stipulation entered into by Erler and Leota Osburn, agreeing to the entry of a judgment or quiet title decree against Osburn declaring that she has no right, title, or interest in the subject real property, and that no other judgment would be entered against her for money owed, damages, costs, attorneys fees, or any other relief. The stipulation further provided that Osburn was not required to appear or file a responsive pleading in this cause.

¶12 The District Court subsequently issued orders quieting title and dismissing all other causes of actions as to Donald Hill and Osburn. Creative Finance and Sherick filed answers. On July 25, 2002, defaults were entered against Raymond Hill, Susan Hill, and Cloverhill Mortgage Group. On September 20, 2002, a stipulation between Erler and Creative Finance was filed agreeing to the dismissal with prejudice of all claims in Erler's complaint against Creative Finance, with each party bearing their own attorneys fees and costs. On October 1, 2002, Erler, the McClains, and Sherick, after learning that the subject property was occupied by three tenants who paid monthly rent to Cardinal Property Sales and Management (Cardinal), which was then forwarding the rent, less deductions for taxes, utilities, and fees, to Raymond Hill, filed a joint motion to appoint receiver to hold all rental income remaining after payment of normal expenses pending the court's final order in this matter. The parties requested that Cardinal be appointed receiver, and the District Court granted the motion.

¶13 The McClains filed a motion for summary judgment on December 24, 2002, asserting that they were entitled to a judgment quieting title to the property in them. Erler

6

filed a cross motion for summary judgment, asking the District Court to quiet title in his favor. Sherick opposed both motions on the basis that the documents of conveyance to all three parties were forged and therefore void, and filed the affidavits of Donald Hill and Leota Osburn. In Donald Hill's affidavit, he stated that he had never resided in Davenport, Iowa; did not sign the purported assignment to Questa; did not appear before a notary public in Cedar County, Iowa; knew nothing about the recordation of the quitclaim deed from Erler to himself and Patricia Hill; never assigned any rights in a contract for deed to Erler or the McClains; never transferred any interest in the property to Erler or the McClains; and did not receive any money from Questa, Erler, or the McClains for a transfer of his interest in the property.

¶14 Leota Osburn stated in her affidavit that she did not sign or give anyone authority to sign the assignment purporting to transfer her seller's interest to Erler. She also stated the signature appearing in the recorded document was not hers, and that she was not in Iowa at the time the document was purportedly signed and notarized. Erler received $44,000 as a result of a claim made under his title policy with First American Title of Missoula. The McClains received $85,000 as a result of a claim made under their title policy with First American Title Company of Hamilton, Montana.

¶15 The District Court concluded that the documents of conveyance to all three parties were forged and therefore void *ab initio* and transferred no rights to any of the parties. However, the court further concluded that Donald Hill and Osburn had ratified the forged conveyances by their subsequent actions. The court further determined that because Erler

7

was the first to properly record a document of transfer, he was entitled to have title quieted in him. Sherick appeals.[1]

## STANDARD OF REVIEW

¶16    This Court's standard of review on appeal from summary judgment rulings is *de novo*. *May v. ERA Landmark Real Estate of Bozeman*, 2000 MT 299, ¶ 17, 302 Mont. 326, 15 P.3d 1179. "We review a district court's summary judgment to determine whether it was correctly decided pursuant to Rule 56, M. R. Civ. P., which provides that summary judgment is appropriate only when there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law." *May*, ¶ 17. We review questions of law to determine whether the district court's legal conclusions are correct. *Palmer v. Bahm*, 2006 MT 29, ¶ 11, 331 Mont. 105, 128 P.3d 1031.

## DISCUSSION

**¶17    *Did the District Court err in ruling that Leota Osburn and Donald Hill ratified the forged deed transferring property to Erler?***

¶18    Sherick agrees with the District Court's conclusion that the deeds to Erler, Questa and Sherick were all void *ab initio* because they were forged. However, Sherick contends that the court erred by ruling that title was quieted in Erler pursuant to the doctrine of ratification. Sherick asserts that void deeds can never be ratified. Alternatively, Sherick contends that if void deeds can be ratified, the District Court erred

---

[1] McClain also initially appealed. However, following appellate mediation, Erler and McClain reached a settlement wherein McClain quitclaimed any interest held in the property to Erler. McClain is no longer a party in the appeal.

8

because: (1) the statute of frauds requires prior written authority from Osburn and Donald Hill permitting Susan Hill to sign on their behalf, and no written authority exists; (2) the elements of agency ratification are unmet, making any ratification invalid; and (3) ratification cannot prejudice third parties and he is prejudiced by any ratification of the forged deeds. Sherick also contends that Erler's stipulations with Osburn and Hill did not authorize the entry of judgment quieting title in Erler. Lastly, Sherick argues that the recording of the void deeds has no effect and was not an appropriate reason for the court to quiet title in favor of Erler over the others.

¶19     Erler responds that the District Court did not err by ratifying the transfer documents. Erler contends that Sherick has not presented "any recognizable legal foundation" for contending that void deeds or previously unauthorized acts cannot be ratified; that the court correctly considered and applied the doctrine of ratification; and that the court did not err in concluding that the subsequent actions by Osburn ratified Susan Hill's act of conveying the property to Erler.

¶20     Before turning to the central issue of the ratification of a void deed, we briefly discuss the District Court's conclusion that the deeds herein were void *ab initio*. This requires a discussion of bona fide purchasers for value and the general law surrounding forged and fraudulently procured deeds.

### Bona Fide Purchasers for Value

¶21     Montana law generally protects a subsequent innocent purchaser of real property who gives value and lacks notice of impropriety. Such a purchaser is known as a bona

9

fide purchaser for value (BFP) and his interest in the property can be preserved, even if the deed was fraudulently procured. Section 70-20-404, MCA. However, where a property is fraudulently transferred, a subsequent purchaser's rights are void if the purchaser was privy to or had notice of the fraud, because an individual with notice of the fraud lacks BFP status. Sections 70-20-401, -402, MCA. Only where the individual is a BFP and is the first BFP to duly record his interest will the curative statute, § 70-20-404, MCA, save the BFP's interest against a subsequent purchaser's interest. Section 70-21-304, MCA. The recording system imparts constructive notice to subsequent purchasers that there exists another interest in the property. As such, a subsequent purchaser who parts with value for the property but is on constructive notice of a prior interest in the property is not a BFP and may not rely on § 70-20-404, MCA, to save his interest.

¶22 However, the curative statute operates to protect BFPs only with regard to fraudulent conveyances, not forged deeds. This is because fraudulent conveyances are *voidable* between the parties, whereas forged conveyances are *void ab initio* and do not transfer title. However technical this distinction may appear, various courts have determined that a forgery is one of the few defenses that can defeat the claim of a BFP. *See Upson v. Goodland St. Bank & Trust Co.*, 823 P.2d 704, 706 (Colo. 1992) (bona fide purchaser status is immaterial when faced with a forged deed); *Burns v. Ross*, 212 P. 17, 20 (Cal. 1923) (the rights of a bona fide purchaser are defeated where the contract of sale was a forged assignment); *Harding v. Ja Laur Corp.*, 315 A.2d 132, 135 (Md. Spec. App. 1974) (a bona fide purchaser may not prevail on a forged deed because the deed is void);

10

*see also Second Refuge Church v. Lollar*, 653 S.E.2d 462, 468 n. 18 (Ga. 2007). A forgery is the "false making or material alteration, with intent to defraud, of any writing which, if genuine, might apparently be of legal efficacy or the foundation of legal liability . . . A forged deed is absolutely void and wholly ineffectual to pass title, even to a subsequent innocent purchaser." 23 Am. Jur. 2d. *Deeds* § 164 (2002). "As we have stated in the context of tax deeds, 'a curative statute cannot breathe life and validity into . . . void . . . deeds.'" *McWilliams v. Clem*, 228 Mont. 297, 308, 743 P.2d 577, 584 (1987) (quoting *Lowery v. Garfield County*, 122 Mont. 571, 583, 208 P.2d 478, 485 (1949)).

¶23     Accordingly, § 70-20-404, MCA, cannot save a BFP's interest if that interest is dependent upon a void deed. While we were not clearly presented with the issue of forgery in *McWilliams v. Clem*, we concluded that a deed without the proper grantor signature renders the deed void as to that grantor. This holding is consistent with the accepted view that forged deeds or fraudulently altered deeds are either entirely void or partially void as to the grantor whose signature is not genuine. *McWilliams*, 228 Mont. at 308, 743 P.2d at 584; *see also Pub. Adminstr. Kings County v. Samerson*, 750 N.Y.S.2d 301, 302 (2002) ("a person cannot be a bona fide purchaser for value through a forged deed, as it is void and conveys no title.").

¶24     Here, the District Court correctly determined that a forged deed is void and transfers no rights, even if the subsequent purchaser is a BFP. The court was presented with uncontested evidence that the Osburn-Erler, Hill-Questa, and Hill-Sherick deeds were forged, and therefore, the court concluded that all three deeds were void *ab initio*

11

and transferred no rights.[2] Neither party contests this conclusion on appeal. Accordingly, the curative statute does not save Erler's interest in the property, even though Erler parted with value, had no notice of the forgery, and duly recorded the appropriate transfer documents. The District Court then considered the doctrine of ratification and ultimately quieted title in Erler pursuant thereto.

***Ratification Generally***

¶25 The doctrine of ratification has a robust history within our state's jurisprudence, its application checkered only by two decisions, discussed hereinafter. Ratification appeared even before statehood, in *Schnepel v. Mellen* (1878), 3 Mont. 118, where the Court explained that one can "be bound by the authorized acts of another or by the ratification of unauthorized acts." *Schnepel*, 3 Mont. at 128. In *Koerner v. Northern P. Ry. Co.* (1919), 56 Mont. 511, 186 P. 337, we noted that ratification "is defined to be the confirmation of a previous act done either by the party himself or by another." *Koerner*, 56 Mont. at 520. We provided a fuller analysis in *Larson v. Marcy*, 61 Mont. 1, 201 P. 685 (1921):

> Ratification may be effected by express declaration or by implication, and it may be implied from any acts or conduct on the part of the principal which reasonably tends to show an intention on his part to make the act of the agent his own. And where the agency is shown to exist, the facts will be construed liberally in favor of the approval of the principal, and very slight circumstances and small matters will suffice to raise the presumption of

[2] The court also concluded that the Questa-McClain deed was void because the Hill-Questa deed resulted from the fraudulent release from escrow of Erler's quitclaim deed in favor of Donald and Patricia Hill. The court concluded that a deed delivered by the escrow holder without compliance with the terms of the escrow agreement is inoperative and title is not effectively transferred.

> ratification in favor of a third party who has dealt with the agent upon the assumption that he possessed the authority and has surrendered a substantial right upon the faith of such assumed power. While mere acquiescence on the part of the principal is not necessarily conclusive, it is to be considered as evidence of ratification upon the theory that it is the duty of the principal to repudiate the unauthorized act of his agent within a reasonable time after discovery unless he intends to be bound by it, and such repudiation must be brought home to the party beneficially affected. The numerous authorities supporting these propositions need not be cited.

*Larson*, 61 Mont. at 8-9, 201 P. at 687. We thereafter regularly cited and employed the doctrine in a variety of contexts. *See Arnold v. Genzberger*, 96 Mont. 358, 31 P.2d 396 (1934); *White v. Sorenson*, 141 Mont. 318, 377 P.2d 364 (1963); *Audit Servs. Inc. v. Francis Tindall Constr.*, 183 Mont. 474, 600 P.2d 811 (1979); *Safeco Ins. Co. v. Lovely Agency*, 200 Mont. 447, 652 P.2d 1160 (1982); *Wyman v. Wyman*, 208 Mont. 57, 676 P.2d 181 (1984); *Moore v. Adolph*, 242 Mont. 221, 789 P.2d 1239 (1990); *Daniels v. Dean*, 253 Mont. 465, 833 P.2d 1078 (1992); and *Stowers v. Community Med. Ctr. Inc.*, 2007 MT 309, 340 Mont. 116, 172 P.3d 1252.

¶26 In *Audit Services*, a contract case, we said that "[r]atification may occur in either an express oral manner or solely by means of personal conduct," and explained that:

> Ratification is a form of equitable estoppel and ordinarily is applied strictly in an agency context, whereby a principal approves the unauthorized act of an agent. *See Larson v. Marcy* (1921), 61 Mont. 1, 201 P. 685. *However, it is also applied in varying classes of cases including contracts.* Generally, contract ratification is the adoption of a previously formed contract, notwithstanding a quality that rendered it relatively void and by the very act of ratification the party affirming becomes bound by it and entitled to all the proper benefits from it. *Shagun v. Scott Mfg. Co.* (8th Cir. 1908), 162 F. 209, 219. The contract is obligatory from its inception and may be signified from the commission or omission of acts. *East Cent. Okl. Elec. Coop., Inc. v. Oklahoma G. & E. Co.* (Okl. 1977), 505 P.2d 1324, 1329.

\* \* \*

It is the manifestation of the ratifying party which controls.

*Audit Servs.*, 183 Mont. at 477-78 (emphasis added).

¶27 In *Safeco,* we further refined the doctrine's application by delineating the elements

to be satisfied for ratification to occur:

> [R]atification exists upon the concurrence of three elements:
>
> (1) acceptance by the principal of the benefits of the agent's act,
>
> (2) with full knowledge of the facts and,
>
> (3) circumstances or an affirmative election indicating an intention to adopt the unauthorized arrangement . . . .
>
> A requisite to the existence of ratification is good faith on the part of the person who asserts that the principal ratified the alleged agent's unauthorized act.

*Safeco*, 200 Mont. at 453, 652 P.2d 1163 (quoting 2A C.J.S. *Agency* § 71). We have

cited these standards in the cases following *Safeco*.

¶28 Further, ratification can include situations where a prior agency relationship did

not exist, because a "subsequent ratification" of an unauthorized act may likewise create

the agency relationship. Section 28-10-201, MCA; *see also Arnold*, 96 Mont. at 375

("The ratification . . . operates upon the act ratified precisely as though authority to do the

act had been previously given.").

**Forged Signature Ratification**

¶29 Within the law of agency it is generally accepted that "a principal may ratify the

forgery of his signature by his agent." *Rakestraw v. Rodrigues*, 500 P.2d 1401, 1405

14

(Cal. 1972) (quotation omitted); *See also Restatement (Second) of Agency*, § 85, Cmt. B (1957) ("if one impersonates another . . . or executes or delivers an instrument purportedly signed by another, the rationale of ratification is applicable and the act or transaction can be ratified by affirmance if it does not involve an illegal agreement."); *see also Ferguson v. Bishop*, 258 S.E.2d 143, 145 (Ga. App. 1979) (ratification of a forged signature relates back to the act ratified and takes effect as if originally authorized); *Atlas Bldg. Supply Co. v. First Indep. Bank of Vancouver*, 550 P.2d 26 (Wash. App. Div. 2 1976) (an unauthorized signature may be ratified); *Hefner v. Vandolah*, 62 Ill. 483, 485 (1872) (a forged signature on a promissory note may be ratified); *Cook v. Great W. Bank & Trust*, 685 P.2d 145, 149 (Ariz. App. Div. 1 1984) ("[w]hether there has been ratification of a forged signature is usually a question of fact.").

¶30    In the forged signature context, it has likewise been held that where a prior agency relationship did not exist, a subsequent ratification of the forgery creates an agency relationship.  The California Supreme Court has explained that "the ratification of an act of forgery by one held out to be a principal creates an agency relationship between such person and the purported agent and relieves the agent of civil liability to the principal which otherwise would result from the fact that he acted independently and without authority." *Rakestraw*, 500 P.2d at 1405.  Similarly, the Illinois Supreme Court concluded that a previous agency relationship is not necessary for ratification of a forged signature to occur, but rather, an agency relationship is implied after ratification. *Hefner*, 62 Ill. at 485.  Even those jurisdictions which generally do not permit ratification of

15

forged signatures have nonetheless accepted ratification of a forgery where estoppel applies. *Compare Sinew v. First Nat'l Bank*, 95 N.E. 881 (1911) (stating that a forgery cannot be ratified) *with Workman v. Wright*, 33 Ohio St. 405, 408 (1889) (explaining that ratification of forgery is allowed under principles of promissory estoppel); *see also Bank of Commerce of Louisville v. McCarty*, 231 N.W. 34, 38 (Neb. 1930) (a forgery cannot be ratified without estoppel or new consideration). We have not restricted application of the doctrine to cases involving estoppel or new consideration, but have entertained the doctrine in other contexts. *See Moore*, 242 Mont. at 222-23, 789 P.2d at 1240-41.

***Ratification of Forged Deeds***

¶31 Relying primarily on the dissenting opinion in *Johnstone v. Sanborn*, 138 Mont. 467, 501, 358 P.2d 399, 416 (1960) (a "void transfer is, in effect no transfer. A void deed is, in effect no deed. Such a deed is a nullity *ab initio*."), Sherick argues that because forged deeds are void *ab initio*, they effectively do not exist and cannot be ratified. Erler responds that Sherick has not submitted any controlling Montana law which forecloses the possibility that forged deeds can be subject to ratification. In his reply brief, Sherick also offers *Hames v. City of Polson*, 123 Mont. 469, 215 P.2d 950 (1950), and *In re Estate of Griffin*, 248 Mont. 472, 812 P.2d 1256 (1991), which made similar statements to those made in the *Johnstone* dissent.

¶32 *Hames* involved a lease entered by the City of Polson without legal authority, about which the Court concluded that "[c]ontracts made in violation of express statutes are contrary to public policy and absolutely and wholly void and of no legal effect."

16

*Hames*, 123 Mont. at 484, 215 P.2d at 958. The *Hames* Court added that "[a] void contract is no contract at all; it binds no one and is a mere nullity . . . . It requires no disaffirmance to avoid it and it cannot be validated by ratification." *Hames*, 123 Mont. at 484, 215 P.2d at 958 (quotation omitted). The purpose of the Court's reference to ratification is unclear, as the opinion does not explain what ratification argument was offered by the City. Regardless, this apparent rejection of the ratification doctrine, facially inconsistent with our longstanding case law, must be viewed in the context of that case, which involved a contract entered in violation of statute. Understandably, ratification cannot validate a contract which would be illegal in any event.

¶33 In *Estate of Griffin*, a surviving spouse, the personal representative of the Estate, entered an agreement on behalf of her minor daughter, an heir, to sell the daughter's interest in an estate business to Appellant, another heir, prior to appointment of the surviving spouse as her daughter's conservator. After being appointed conservator, the surviving spouse sought to withdraw from the agreement, and Appellant argued that her conduct following her appointment as personal representative demonstrated that she had ratified the agreement. The Court rejected Appellant's argument, concluding that because the surviving spouse "had no authority to enter the contract on behalf of her minor child" prior to her appointment as conservator, the agreement was thus "void at its inception." *Estate of Griffin*, 248 Mont. at 476, 812 P.2d at 1258. Citing the broad language of *Hames*, the Court concluded that "[t]he contract here is void, hence there can

17

be no material fact issue concerning its ratification." *Estate of Griffin*, 248 Mont. at 476, 812 P.2d at 1258-59.

¶34   Without re-deciding the case here, we question whether *Estate of Griffin* properly applied the doctrine of ratification.  At a minimum, *Estate of Griffin* did not involve a contract which would have remained illegal even if subsequent actions could be said to have ratified it, as in *Hames*.  The Appellant had asserted that the surviving spouse's conduct following her appointment as conservator, after she had obtained appropriate authority, had ratified the contract.  As noted above, contracts involving forged signatures have likewise been entered without proper authority, yet courts have commonly concluded that such contracts could be subsequently ratified.  In any event, the facts in *Estate of Griffin* differ substantially from the facts of this case, and the law governing the documents at issue also differs, and we conclude that *Estate of Griffin* does not control the outcome here.  Likewise, we do not find *Hames'* rejection of ratification to be dispositive here.  Neither case involved a forged deed which the original grantor allegedly ratified at a later time.

¶35   Though none of our cases have involved a forged deed, other courts faced with the issue have generally accepted ratification of the forgery.  *See Zurstrassen v. Stonier*, 786 So. 2d. 65 (Fla. App. 4 Dist. 2001) (estoppel, waiver, and ratification are all defenses to a deed voided because of forgery); *Hockett v. Larson*, 742 F.2d 1123, 1125 (8th Cir. 1984) ("waiver and ratification [are] available in a case involving a forged deed"); *see also* Robert G. Natelson, *Modern Law of Deeds to Real Property* § 15.2, 394 (Little, Brown &

18

Co. 1992) ("[a] grantor may make a deed with an unauthorized signature effective by ratifying it.") In *Zurstrassen*, the property owner, Klaus, brought an action to quiet title and for rescission after discovering that his brother, Rolf, had forged a deed transferring Klaus's interest in the property to himself, which he later sold to a subsequent bona fide purchaser for value, David Stonier (Stonier). Stonier then sold the property to the Wihlborgs. Klaus claimed that the deed was a forgery and instituted suit to quiet title to the property. The lower court granted summary judgment for Stonier, and Klaus appealed. The appellate court determined that the forged deed was void and thus created no legal title and afforded no protection to those claiming under it. However, the court also determined that "equitable estoppel principles apply, even to void deeds." *Zurstrassen*, 786 So. 2d at 68. The court held that the issue of ratification is one of fact, and "if a party knows of a fraud, does not reject it, and takes any material act inconsistent with an intent to avoid it or delays in asserting any remedial rights, then that party ratifies the fraud." *Zurstrassen*, 786 So. 2d at 71. The court concluded that the issues of estoppel, waiver, and ratification precluded the lower court's summary judgment ruling, because material issues of fact existed as to all three.

¶36 Similarly, in *Ferguson v. Golf Course Consultants, Inc.*, 252 S.E.2d 907 (Ga. 1979), the Georgia Supreme Court explained that equity may regard the conduct of an individual whose signature is forged as ratification of the signature. There, Ferguson's agent, Ullman, signed Ferguson's name on an instrument authorizing the conveyance of land. Ferguson, aware of the sale, deposited the money into his bank account and spent a

19

portion of the proceeds.  Ferguson later brought suit to quiet title, arguing the forgery had voided the deed.  Affirming the lower court's grant of summary judgment against Ferguson, the Georgia Supreme Court held that "[e]quity will regard the actions of Ferguson in knowingly consenting to the sale in return for financial benefits as a ratification of the signature of Ullman on the deed." *Ferguson*, 252 S.E.2d at 908.  In sum, the court permitted ratification of a forged deed.

¶37    We are not persuaded by Sherick's argument that a forged deed cannot be ratified as a matter of law.  Though this particular ratification issue has not previously been addressed in Montana, we have broadly applied the principle with respect to contracts.  While acknowledging that void contracts do not legally exist and transfer no rights, we have nonetheless permitted ratification of such contracts.  There is clear support from other authorities, cited above, that forged deeds may subsequently be ratified.  Principles of equity and justice compel recognition of ratification in order to provide a legal remedy in the appropriate case.  Consequently, we conclude that ratification of a forged deed may properly be considered in equity.  Accordingly, we turn to the three alternative arguments Sherick raises in challenge to the District Court's conclusion that the void deeds here were properly ratified.

***Statute of Frauds***

¶38    Sherick argues that Susan Hill never received proper written authority from Osburn to convey the property to Erler, thereby precluding ratification under the statute of frauds.  Erler responds by arguing that the District Court's conclusion regarding

20

ratification of the Osburn-Erler deed is not precluded by the statute of frauds because written authority may be granted retroactively, and that written authority was conveyed to Susan Hill through the warranty deeds issued from Osburn to Donald Hill to her.

¶39 It is well established that any agreement to sell an interest in property must be in writing. Section 70-20-101, MCA. Further, if an agreement to sell property is to be executed by an agent of the party, the agent's authority must also be evidenced in writing. Section 28-2-903(1)(d), MCA; *see also* § 28-10-203, MCA ("authority to enter a contract required by law to be in writing can only be given by an instrument in writing.") As previously explained, the agency relationship may arise either by precedent authorization or by subsequent ratification. Section 28-10-201, MCA. Sherick, relying upon *Palin v. Gebert Logging, Inc.*, 220 Mont. 405, 407, 716 P.2d 200, 202 (1986), essentially contends that the statute of frauds authorizes an agent to sign on behalf of the principal only when the agent's authority is provided in writing *prior to* the act and that the District Court erred in concluding that the warranty deeds constituted authority for Susan Hill to sell the property.

¶40 *Palin* involved a timber harvest contract between Mel Palin and Gebert Logging on land later determined to be owned by Palin's wife, Hilldegarde. After Gebert had performed the contract, a dispute arose between the parties, with Palin refusing to refund Gebert's $10,000 damage bond. Gebert sued for payment, and Palin counterclaimed for damages Gebert allegedly caused to the property. However, during discovery it was determined that Palin did not own the property, and that he did not have precedent written

21

authority from Hilldegarde Palin to conduct the sale or contract with Gebert. Hilldegarde then submitted an affidavit stating that she approved of the sale. We held that "Hilldegarde Palin, could not ratify the acts of her husband retroactively in this case without the consent of Gebert," citing to § 28-10-213, MCA, which provides that "[n]o unauthorized act can be made valid retroactively to the prejudice of third persons without their consent." *Palin*, 220 Mont. at 407, 716 P.2d at 202. The subsequent authorization offered by Hilldegarde was ineffective in *Palin* in light of Gebert's prior completion of the contract. Allowing Mel Palin to withhold Gebert's deposit and pursue a claim against Gebert for damage to property he did not own on the basis of Hilldegarde's subsequent authorization of the contract would have been prejudicial to Gebert. Thus, Gebert's consent to the subsequent authorization was necessary under the statute.

¶41 Importantly, although § 28-10-213, MCA, prohibits retroactive authorization without consent if another party has been prejudiced, a separate issue discussed below, we did not conclude or imply in *Palin* that subsequent written authority could not satisfy the statute of frauds. As Erler argues, the statute of frauds requires written authority by the owner, but does not by its plain wording make a distinction between precedent authorization or subsequent ratification by the owner. Section 28-2-903(1)(d), MCA. Indeed, we recognized in *Moore* that subsequent ratification of an agent's action can satisfy the statute of frauds if the ratification is made in writing. *Moore*, 242 Mont. at 223; *see also Schmidt v. Bolich*, 2000 MT 190, ¶ 26, 300 Mont. 418, 8 P.3d 83.

22

¶42 Warranty deeds signed by Osburn and Donald Hill were recorded, effectuating the transfer of fee title from Osburn, the principal, to Susan Hill, the agent. These conveyances were recorded on December 14, 2000, over three years after Susan Hill had forged Osburn's signature on the warranty deed transferring fee title to Erler. Although this case involves the unusual scenario where title is subsequently transferred to the offending agent personally, nonetheless, the transfer was in writing. Further, despite Sherick's objection to the sufficiency of the warranty deeds to provide authorization for Susan Hill to act, a grant of fee simple title, as a matter of law, confers upon the grantee the authority to alienate or otherwise dispose of the property in any manner she sees fit. *In re Estate of Cox*, 141 Mont. 583, 589, 380 P.2d 584, 587 (1963). Thus, while Osburn and Donald Hill may not have authorized the actual forgeries, their warranty deeds constituted subsequent written authority for Susan Hill to convey the property. Whether the actions satisfied the doctrine of ratification is a different question, but we cannot conclude that the statute of frauds was violated for want of written authorization.

### Satisfaction of the Criteria for Ratification

¶43 Sherick next argues that the elements for ratification, set forth in *Safeco*, are not satisfied under the uncontested facts herein. For the principal to ratify the agent's action, three criteria must be met: (1) the principal accepts the benefits of the act, (2) with full knowledge of the facts and (3) either the circumstances or an affirmative election indicate the principal's intention to adopt the unauthorized arrangement. *Safeco*, 200 Mont. at 453, 652 P.2d at 1163. Sherick argues that none of the elements were satisfied because

23

"[n]either Ms. Osburn nor Mr. Hill received any benefit by virtue of the forgeries, nor is there any evidence they had 'full knowledge' of the facts . . . [and] there isn't anything indicating 'an intention to adopt the unauthorized arrangement.'"

¶44    In considering whether Susan Hill's unauthorized conveyance was ratified, the District Court analyzed the status of the parties in the chain of title of the subject property. The court first concluded that, in light of the above-referenced deeds which had been voided by forgery, legal title was most recently vested in Raymond and Susan Hill by virtue of the warranty deeds from Osburn to Donald and Patricia Hill, and from Donald and Patricia Hill to Raymond and Susan Hill, recorded on December 14, 2000. However, Raymond and Susan Hill had both been served in this action and had been defaulted after failing to appear. Susan Hill was serving time in federal prison resulting from her convictions of wire fraud, mail fraud, money laundering, and criminal forfeiture, and Raymond Hill had apparently been indicted in federal court in connection with real estate fraud. Thus, the District Court determined that their failure to appear waived their interest in the property and further, citing 28 Am. Jur. 2d Escrow § 38 (2000) ("[r]atification may be presumed by a grantor remaining silent when called upon to speak and others have been injured") and the *Modern Law of Deeds to Real Property*, § 15.2 ("[r]atification requires an intent to affirm the deed . . . . Sometimes ratification is

24

implied from the circumstances"), determined that Raymond and Susan Hill's actions had "ratified whatever forged conveyance Susan Hill allegedly made."[3]

¶45 Moving back up the chain of title, the District Court noted that Donald and Patricia Hill were the next link pursuant to the warranty deed from Osburn to them, recorded on December 14, 2000. Patricia Hill had, prior to her decease, quitclaimed her interest to Donald in May of 1998, and her estate had been dismissed from the action. The District Court explained that Donald Hill had also been dismissed from the action and had waived any interest in the property by way of his stipulation with Erler, filed in December of 2001.[4]

¶46 The District Court then determined that the next link back up the chain of title was Osburn, who held title to the property when it was purportedly transferred to Erler. However, Osburn was also dismissed from the action and waived any interest she had in the property by way of her stipulation with Erler. The District Court concluded that, by her actions, Osburn had subsequently ratified the unauthorized conveyance by Susan Hill to Erler.

¶47 Osburn, the grantor, did not sign the March 25, 1997 Osburn-Erler deed, and at that time did not authorize Susan Hill to execute the deed on her behalf, or even know of

---

[3] The District Court did not explain why it was necessary to conclude that Raymond and Susan Hill had ratified Susan's conveyance to Erler, as it ultimately concluded that Osburn, who held title to the property at the time of the purported transfer to Erler, had ratified Susan's act of conveyance. Raymond and Susan Hill became title owners after the purported transfer to Erler, and then waived any claim to the property in the litigation.

[4] We need not discuss any chain of title possibilities or ratification of the forged Questa-McClain deed because the McClains are no longer parties to this appeal.

25

the transfer. Further, the warranty deed from Osburn, which conveyed her fee interest via warranty deed to Donald and Patricia Hill, was signed when she originally sold the property on contract in 1986, prior to the purported Osburn-Erler transaction, and was held in escrow until the contract for deed was paid off, when it was released and recorded in December of 2000, along with the warranty deeds from the Hills to Raymond and Susan Hill. Nonetheless, Osburn's conduct clearly indicates that she knew the material circumstances affecting the purported transfer of the property by Susan Hill to Erler when she signed the December 2001 stipulation, including the effect of the warranty deed she had signed, and clearly expressed acceptance of the conveyance's result in ceding title to Erler. "Ratification may occur in either an express oral manner or solely by means of personal conduct." *Audit Services*, 183 Mont. at 477, 600 P.2d at 813. "Ratification may be effected by express declaration or by implication, and it may be implied from any acts or conduct on the part of the principal which reasonably tends to show an intention on his part to make the act of the agent his own." *Larson*, 61 Mont. at 8, 201 P. at 687. Moreover, the District Court noted that Osburn had been fully compensated for her interest in the property, thereby accepting the benefit of Susan Hill's conveyance to Erler. Nothing in her affidavit concerning her lack of knowledge about the forgery defeats the effects of her subsequent actions. Accordingly, we conclude that the District Court correctly concluded, on this evidence, that the elements of ratification were satisfied and that Osburn's subsequent actions ratified the Osburn-Erler deed.

26

*Prejudice to Third Parties*

¶48    Sherick's third argument against ratification is that application of the doctrine prejudices him as a third party.  Erler replies that Sherick has failed to demonstrate that ratification of the Osburn-Erler deed prejudiced any existent right Sherick had in the property.

¶49    As explained above, where ratification occurs, the ratification relates back to the act ratified and takes effect as if the act was originally authorized.  However, as noted, § 28-10-213, MCA, provides that "[n]o unauthorized act can be made valid retroactively to the prejudice of third persons without their consent."  Thus, retroactive ratification is ineffective if it lessens the rights or interests of persons who acquired their interest before ratification of the initial act.  *See Schnepel*, 3 Mont. at 128 ("if between the time of performance of the unauthorized act by the agent, and its ratification by the principal, the rights of third parties intervene, such rights are not defeated by the ratification."); *U.S. v. Heinszen*, 206 U.S. 370, 27 S. Ct. 742 (1907) (when an agent has exercised a power in the name of the principal, without precedent authority, the principal may ratify and affirm the unauthorized act, and thus retroactively give it validity when rights of third persons have not intervened).

¶50    We have noted that prejudice is a term which connotes harm or loss of legal rights or privileges belonging to a party.  *Schmitz v. Engstrom*, 2000 MT 275, ¶ 11, 302 Mont. 121, 13 P.3d 38.  Here, Sherick asserts that subsequent ratification of the Osburn-Erler deed prejudices him by nullifying the interest he acquired in the property in June of 1999

27

by way of the Hill-Sherick quitclaim deed. However, this argument is unavailing. Sherick was not prejudiced by ratification of the Osburn-Erler deed because his interest in the property was invalid even prior to the ratification.

¶51 As the District Court correctly reasoned, "Sherick was on constructive notice of the recorded assignment to the McClains[.]" *See* § 70-21-302(1), MCA. Had Sherick conducted a title search he would have discovered McClains' record interest, which purported to purchase the same vendor interest Sherick intended to purchase from Donald Hill, and for which he paid. Accordingly, Sherick is not a BFP because he was on notice of a previously assigned interest in the same property, which he failed to investigate prior to purchase. The District Court properly concluded that Sherick's only remedy lies against his defrauder. Accordingly, ratification of the Osburn-Erler deed does not prejudice Sherick because his interest in the property prior to and after ratification is exactly the same: it is invalid.

***Stipulations***

¶52 Sherick also argues that the stipulations between Erler and Donald Hill, and between Erler and Osburn, did not authorize the entry of judgment quieting title in Erler, but merely authorized the entry of judgment to the effect that Donald Hill and Leota Osburn no longer claimed an interest in the property. Based upon the stipulations, the District Court issued orders stating that title to the property was "hereby quieted" to Erler against Hill and Osburn.

28

¶53 To "stipulate" is to "[a]rrange or settle definitely, as an agreement or covenant." *In re P.S.*, 2006 MT 4, ¶ 15, 330 Mont. 239, 127 P.3d 451 (quoting Black's Law Dictionary, 1415 (6th ed. 1990)). When Osburn and Donald Hill stipulated that they no longer claimed any right, title, or interest in the property, and that a judgment to that effect could be entered against them, they definitively agreed that they had no interest in the land—the ultimate issue within a quiet title action. Further, the stipulations were entered into between Erler, a plaintiff who claimed ownership of the land, and defendants Osburn and Donald Hill, and thus served the purpose of granting relief to Erler on his title claim as to Osburn and Hill. "A stipulation by the parties or judgment by consent is construed as a written contract and operates to end all controversy between the parties." *In re Marriage of Neal*, 267 Mont. 455, 462, 884 P.2d 789, 794 (1994). Erler was thus relieved of the necessity of proving his claim against Osburn and Donald Hill. The court had no obligation to further require the establishment of the factual basis for Erler's claim that Osburn and Donald Hill had no interest in the property. Consequently, the court did not err by relying on the stipulations when quieting title in Erler.

### *Recording of Void Deed*

¶54 Sherick's last argument is that the recording of void deeds has no effect and thus the District Court erred by considering the fact that Erler was the first to record a deed. Sherick reasons that recording a void deed neither transfers property nor provides constructive notice to the public because constructive notice only occurs where the conveyance is properly acknowledged by law, citing § 70-21-302(1), MCA. Sherick is

29

essentially claiming that Erler's forged deed is not in any way superior to his own forged deed, and should not have been used by the District Court to confer title to Erler.

¶55 First, we are concluding that Erler's deed was superior because, not only was it the first to be recorded, it was also ratified. Further, when we considered above whether the ratification had prejudiced Sherick, we did so by determining Sherick's interest in the property prior to the ratification and reviewing the chain of title as it appeared to Sherick at the time of his purchase. While the Hill-Questa deed was declared a void forgery, thereby impairing the Questa-McClain deed, had Sherick conducted a title search, both deeds would have appeared in the chain of title, as both had been duly recorded. On their face, they appeared to be "acknowledged or proved and certified and recorded as prescribed by law." Section 70-21-302(1), MCA. The fact that the deeds were subsequently determined to be void does not change their effectiveness in providing notice on the public record of a claimed interest. To hold that they did not provide any notice because they were ultimately determined to be void would undermine the entire purpose of the constructive notice statute. A title check would have revealed that these deeds were purporting to transfer the same property that Sherick thought he was purchasing, and by availing himself of this notice, he could have avoided his current dilemma.

¶56 We thus reject all of Sherick's defenses. Affirmed.

/S/ JIM RICE

30

We concur:


/S/ JOHN WARNER
/S/ BRIAN MORRIS
/S/ PATRICIA COTTER
/S/ W. WILLIAM LEAPHART